Kellett vs. Robie.

---

KELLETT, Respondent, vs. ROBIE, Appellant.

*March 26 — April 12, 1898.*

*Promise to marry, release of: Excessive damages.*

1. Some difficulty having arisen to prevent the marriage of the par-ties who were engaged, the plaintiff told the defendant that he need not marry her if he did not wish to, and later wrote to him, "If you desire a change, take it, and end the matter right here." The defendant thereupon ceased to visit the plaintiff, and, with-out objection on her part, courted and married another. *Held,* that plaintiff had released the defendant from his engagement.
2. A verdict for $3,500 damages for a breach of a promise of marriage, against a defendant who was worth only $6,000, *held* to be so ex-cessive as to show passion or prejudice on the part of the jury.

APPEAL from a judgment of the circuit court for Winne-bago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

The case is stated in the opinion.

For the appellant there was a brief by *Wesley Mott* and

Kellett vs. Robie.

*Felker, Stewart & Felker,* and oral argument by *F. C. Stewart.*

For the respondent there was a brief by *Bouck & Hilton,* and oral argument by *Gabe Bouck.*

WINSLOW, J. This is an action for breach of promise of marriage, and the plaintiff has obtained a judgment for damages fixed at $3,500. The contract of marriage was admitted, but the defendant claimed that there was a subsequent mutual release. This was denied by the plaintiff, and upon this issue the case was tried.

The evidence showed that the parties became engaged August 30, 1890, the plaintiff then being twenty years of age; and it was agreed that the marriage should not take place for three years. The parties were farmers' children, and lived with their parents in adjoining towns in Winnebago county, about a mile and a half from each other. After the engagement, the defendant frequently called upon the plaintiff until December 17, 1893, at which time the defendant claims that the plaintiff suggested to him that, as long as his (defendant's) people were opposed to the match, they should separate and call the engagement off, and that he assented to this proposition. The defendant never called on the plaintiff after this time, although they had some correspondence, which is in the record. Soon after this alleged conversation, the defendant commenced to call upon another young lady in the neighborhood, and continued to pay attention to her without objection on the part of the plaintiff, until he was married to her in December, 1895. The plaintiff denied positively that she released the defendant from the engagement. In the course of her examination as a party under sec. 4096, R. S. 1878, she admitted that they had a conversation in December, 1893, in which she says, "I told him if he did not want to marry me, of course he could suit himself; but he said *he* was marrying me, not his people, and he came to see me just the same." The evidence showed

Kellett vs. Robie.

that the defendant was worth about $6,000, composed of his interest in the estates of his father and grandfather, both of which were still unsettled.

Several exceptions to rulings upon evidence and to the charge of the court were argued by the appellant, but, as we do not think we should be compelled to reverse the judgment on account of them alone, we shall not discuss them, but proceed to the main question, namely, whether the verdict is contrary to the evidence.

Upon this question, after careful consideration of all the evidence, and especially of the letters written by the plaintiff after the alleged release, we can come to no conclusion except that the verdict is clearly against the preponderance of the evidence. These letters demonstrate to a certainty that something of a serious nature had interrupted the relations of the parties about the time that the defendant alleges the release took place. No explanation as to what this serious event was is offered, except the defendant's explanation of a release. We shall not give the letters in full, but content ourselves with some extracts, which seem to conclusively establish that the former relationship was broken off, and that marriage was no longer contemplated.

In a letter of January 21, 1894, she says: "*Fred:* If you desire a change, why take it, and end the matter right here. As I said previously, I cannot count second. I am glad of one thing: if we do separate forever, you can always think that I performed my duty by you from the very first to the last." On March 1, 1894, she wrote: "*Fred:* You may think it queer on my part in asking you to come and see me, after what has happened. I would never do so if it were not absolutely necessary, *Fred;* that you know. I know it will cause hard feelings, but I cannot help it. You must know, and the sooner the better. So let me see you as soon as possible. If I have done wrong in writing, please forgive me, *Fred;* it is for your and my welfare." On

March 8, 1894, she wrote again: "I just want you to come just once, and risk everything to oblige me. Your trouble is as nothing compared to mine. I knew you were in town Monday. I seen your horse, and some way I felt you were there. I don't feel hard toward you one bit, *Fred.* You will find me just the same. I am not fickle; once is forever with me; so don't feel bad about nothing. You shall never suffer through me again. I hope the day may come when you forget that you ever knew me. . . . Now, *Fred*, if you don't want to come, and if you think you will be happier by staying away, why I will try and bear it."

When the plaintiff said to the defendant in her letter of January 21st, "If you desire a change, take it, and end the matter right here," we can see no escape from the conclusion that it was an offer of freedom from the engagement; and when it further appears that the defendant acted upon this or a similar offer, and, without objection from the plaintiff but with her knowledge, courted and married another woman, it must be considered that the offer was accepted, and that the plaintiff has become bound by the offer and its acceptance. We are unable to understand how, in the face of this evidence, the jury could have found that there was not a mutual release of the engagement.

In connection with this unaccountable verdict, we cannot refrain from saying that the damages awarded are grossly excessive, and that we should feel obliged to reverse upon this ground in any event. The defendant's estate amounted to about $6,000, and there are no circumstances of aggravation in the case. The defendant is now married, and to give considerably more than half of his property as damages upon the facts appearing here, even if there had been no express release, we regard as out of the bounds of reason. The damages are so far excessive as to show passion, if not perversity, on the part of the jury.

*By the Court.*— Judgment reversed, and action remanded for a new trial.