Goodman, Appellant, vs. Kortsch and wife, Respondents.

*April 6—May 8, 1928.*

For the appellant there was a brief by *Goodman & Goodman,* attorneys, and *Bertram B. Goodman,* of counsel, all of Milwaukee, and oral argument by *Bertram B. Goodman.*

For the respondents there was a brief by *Timlin & Dean* and *Thomas A. Manning,* all of Milwaukee, and oral argument by *Mr. Manning.*

DOERFLER, J.    The character of the buildings erected upon the lots in this subdivision, in accordance with the stipulation, are such as are alleged in the answer of the defendants.    A certain blue-print of the subdivision indicates the nature and kind of buildings that have been erected upon the lots in the subdivision, and such blue-print was expressly included in the stipulation as a true representation not only of the subdivision but of the buildings erected on the lots. An inspection of this blue-print makes it manifest that the

lots in some of the blocks in the subdivision, with few exceptions, contain single dwelling houses. For instance, block 12 seems to be divided into 16 single lots, and upon these lots are located buildings used for residence purposes, as follows: 13 single residences, 2 duplex flats, and 1 four-apartment building. This block is located upon the northwest corner of Bradford street and Maryland avenue. Directly west of block 12 is block 10, and the property here involved is located in this block. Directly to the north of this lot there is a single residence dwelling. Such is also the case with respect to the two lots directly south. This block contains 5 duplex buildings and 9 single dwelling houses. The block directly west of block 10, viz. block 8, contains 14 single dwelling houses, 4 duplex flats, and 1 four-apartment building. Block 6, directly to the west of block 8, contains 5 single dwelling houses, 12 duplex flats, and 1 three-apartment building. The four blocks located to the north and fronting on Belleview Place have a corresponding sprinkling of buildings of the character heretofore described located thereon.

Under these facts the lower court has found a wholesale abandonment of the restrictive covenants as to the erection of dwelling houses upon the lots and the use thereof as such dwelling houses. In arriving at this conclusion the lower court clearly was in error. The writer has previously had a number of occasions to examine into the matter of the abandonment of restrictive covenants, and in the numerous cases reviewed has found no case which so thoroughly and logically treats of the subject as *Ward v. Prospect Manor Corp.* 188 Wis. 534, 206 N. W. 856, in an opinion rendered by Mr. Justice OWEN of this court. On page 540 of the opinion it is said:

"It is now generally recognized by the overwhelming weight of authority in this country that an individual lot-owner is not under penalty of waiving his right to the en-

forcement of a restrictive covenant by his failure to take notice of such violations as do not affect him. Thus in *Brigham v. H. G. Mulock Co.* 74 N. J. Eq. 287, 289, 70 Atl. 185, it is said 'that any claim of bar asserted against the rights of an owner of a single lot by reason of acquiescence in violation of restrictive covenants of this nature must be measured by the relation of the asserted violation to the individual lot.' In *De Lima v. Mitchell,* 49 Misc. 171, 98 N. Y. Supp. 811, 813, the court says: 'In order to have the benefit of restrictive covenants, it is not necessary that the plaintiff should take notice of every violation thereof. He may take no notice of violations not especially offensive to him without losing his right to enforce the restrictions in the case of especially offensive violations.' "

It may also be said that nearly all of the cases arising with respect to restrictive covenants are brought in courts of equity, to restrain violations by injunction. In such cases a complainant himself must do equity before he appeals to a court of equity for relief. The present action, however, is purely an action at law. The plaintiff is interested in this property by virtue of his contract; the defendants because they are the owners, subject to the contract. Many defenses are available in a court of equity which would have no standing in a law court, but in the instant case the plaintiff bargained for a warranty deed. He is willing to accept the property subject to all of the restrictions contained in the restrictive covenant, while the defendants, not willing to comply with their obligations contained in the option agreement, offer to execute and deliver a warranty deed subject to all of the restrictions excepting the covenant pertaining to dwelling houses and the use thereof, upon the theory that such restriction has been abandoned. In view of the holding of this court in the *Ward Case* it must be held, under the stipulation of facts, that there was no abandonment of the restrictive covenant involved.

Restrictive covenants are readily and easily created. Where, as in the instant case, these covenants are matters of

record and have been included in all of the original deeds of lots in the subdivision, they constitute a mutual agreement between all the owners of the property in the subdivision that these covenants shall be maintained. They are not as easily or readily abrogated as they are created. When created, each lot is converted into both a dominant and a servient estate. Every owner of a lot, by reason of the restrictive covenants, obtains an easement (negative in its nature) in every other lot. These easements are matters of record, and they constitute incumbrances upon the property. *Neff v. Rubin,* 161 Wis. 511, 154 N. W. 976. Every lotowner who has not himself become estopped by reason of his acts to assert his rights under these negative easements must be dealt with before it can be said that there has been an abandonment of the easement. In other words, each lotowner must have his day in court, and even though an owner of a lot has himself been guilty of such conduct as to preclude him from relief in a court of equity, the restrictive covenants are of record even as to him, and constitute a cloud upon the titles.

Under such circumstances, how can it be said that the restrictive covenant as to dwelling houses has been abandoned, and that under the stipulation the defendants complied with their obligations under the agreement of sale; and how can the defendants execute a warranty deed of the property involved, free and clear of restrictive covenants as was required by the agreement, when many others who are owners of lots in the subdivision, or who are interested in such lots, have not been made parties so as to bar their rights with respect to these equitable easements?

We therefore conclude that the court erred in dismissing plaintiff's complaint, and that the judgment of the lower court must be reversed, with directions to enter judgment in plaintiff's favor, with costs.

*By the Court.*—It is so ordered.