## King *v.* Goode.

Opinion delivered April 13, 1931.

*W. P. Smith, George T. Humphries* and *Cole & Poindexter,* for appellant.

*W. A. Jackson, W. E. Beloate, Jr.,* and *W. E. Beloate,* for appellee.

MEHAFFY, J. Appellee brought this suit in the circuit court of Sharp County against the appellant for a breach of marriage contract.

The appellant answered denying that he had ever promised to marry appellee, and denied all the material allegations in her complaint.

The evidence is voluminous, and it is unnecessary to set it out here, but we have carefully considered the entire evidence tending to show promise of marriage and have reached the conclusion that there was sufficient evidence to submit this question to the jury. The evidence is not very definite, and most of it relates to the conduct of appellant with reference to his management of appellee's business and affairs as attorney, but she testifies that he promised to marry her, naming the time and place where the promise was made.

Numerous letters written by the parties were introduced in evidence, and none of them, either appellant's or appellee's, indicated any promise of marriage at all;

still the credibility of witnesses and weight to be given to testimony is a question for the jury, and we think there was substantial evidence to submit this question to the jury.

Appellee testified that she was forty years old, the mother of four children living, the oldest one being nearly twenty-one years old; that she employed D. L. King, the appellant, after her husband's death, to look after the interests of the estate and defend and save the home and to represent her and her children in certain litigation. She testified that there was no date set for the marriage, but that it was to be when appellant got all her matters straightened out, property in shape, etc.

Her testimony as to the appellant's breach of the contract is also indefinite. When asked why she did not marry him, she said that he came down there some time after the promise and commenced demanding payment for the money he had put up for them, and before that he said nothing to her about it, and she had been making repairs on the place and paying taxes, and when she told him she did not have the money he said he would take the land. She was then asked if he made known to her that he would not marry her, and she said, "Yes, sir; he made it very plain to me that he no longer loved me, and that he would no longer look after my interests."

When appellee was asked when Senator King refused to marry her, she said: "When he came down there and said he was going to take our farm and everything we had from us and put us out." She was then asked, "Did you broach the subject of marriage at that time to him?" She answered: "No, sir; indeed not, after he had told me what he was going to do." She was then asked; "You did not want him to marry you?" and she answered, "Not if he did not want me; his actions and statements showed clearly that he did not intend to marry me." She further stated that at the time she married Mr. Goode, Senator King had not told her that he was not going to marry her. She said that he said he was

going to take the farm and all that they had and put them out, but that she did not discuss marriage with him.

It therefore appears from appellee's own evidence that the appellant never did refuse to marry her; that they never discussed the subject; but she claims that, because he wanted to take her property after having paid a judgment of $7,000, that was a breach of his promise of marriage. However, if his conduct and what he said about the property could be treated as a refusal to marry, her evidence and conduct shows that she acquiesced in it. She stated that she did not want to marry him if he did want to marry her. She never requested him to carry out his promise to marry her, never discussed it with him, and she further testified that at the time she married Mr. Goode appellant had never told her he was not going to marry her. She also testified that a short time after this she married Mr. Goode, although the things that she said were to be done before she and appellant were to be married had not been done, and she had never requested appellant to marry her and never discussed the marriage with him.

She married Mr. Goode on the 12th of August, not a great while after she says the appellant told her he was going to take her property. She testified that the appellant came to see her two days before she married Mr. Goode and furnished her money to buy some land. She told him she had to spend what money she had on account of sickness, and that she was borrowing it from her mother, and she says he told her there was no use to do that, and that he had the money ready for her. Now this, according to her own testimony, was only two days before she married Mr. Goode, and the relations of appellee and appellant were such that he was still visiting her and furnishing her money, and he had never refused to marry her.

Evidently when he wanted her to pay back what he had advanced, she concluded that she did not want to marry him.

An agreement to marry, like any other contract or agreement, may be dissolved or rescinded by the mutual consent of the parties; and where one party seeks to repudiate the promise, the consent of the other party may be inferred from circumstances indicating an evident intention to abandon the contract. 2 Black on Rescission & Cancellation 937; 9 C. J. 331; *Dean* v. *Skiff*, 128 Mass. 174; *Kellett* v. *Robie*, 99 Wis. 303, 74 N. W. 781; *Mabin* v. *Webster*, 129 Ind. 430, 28 N. E. 863; *Shellenberger* v. *Blake*, 67 Ind. 75.

We do not deem it necessary to set out or call attention to the evidence, a great portion of which was with reference to property and with reference to the conduct of appellant in the management of appellee's property. We have set out the substance of all the evidence tending to show a breach of the promise by appellant and appellee's acquiescence or agreement to the rescission.

We have reached the conclusion that, if there was a contract made and violated by appellant, the evidence conclusively shows that it was rescinded by mutual agreement.

The judgment will therefore be reversed, and, since it appears that the case was fully developed, it will be dismissed.