EWERT, Respondent, vs. HAMMER, Appellant.

*October 9—November 7, 1933.*

648

For the appellant there was a brief by *Wheeler & Witte* of Milwaukee, and oral argument by *Lyman G. Wheeler* and *R. S. Witte.*

For the respondent there was a brief by *Lamfrom, Tighe, Engelhard & Peck* of Milwaukee, and oral argument by *Egon W. Peck.*

ROSENBERRY, C. J. The principal contention of the defendant is that under the doctrine of *Kellett v. Robie,* 99 Wis. 303, 74 N. W. 781, the evidence offered and received on the trial established a mutual abandonment or rescission of the contract of marriage. In that case the plaintiff wrote the defendant: "If you desire a change, take it, and end the matter right here." The defendant in that case acted upon the plaintiff's proposal and it was held sufficient to work a cancellation or rescission of the contract. In this case, after a number of disagreements or disputes said by the

defendant to number seven, the plaintiff wrote the defendant a letter, which after the salutation read:

"I would like to see you next week some night. I have a very important matter to discuss with you, and I know you will not regret the time you will spend with me. I have thought my way clear through the existing conditions, and you may as well know my decision. I know you will feel more relieved and happier ·once more. There is no reason why two people should be made unhappy when it is within my power to relieve that situation. I don't want you to be unhappy. I would like to see you Tuesday evening right from the office. Always yours,

(Over) · MILDRED.

"Dorothy and Irv. want us to come over to play cards with them on Wednesday.. I did not not say yes or no to the invitation, and thought we would discuss this, as well as future invitations, when we see each other next week."

To this letter the defendant made no reply. The defendant claims that plaintiff called him up subsequently and that a meeting was arranged at the office in which the. plaintiff worked, on Saturday afternoon,—he thinks it was the following. week. · He kept the appointment and according to the defendant's testimony plaintiff told him that there was no use going on as they were and offered him back the ring, to which he replied: "Well, you had better keep the ring. If I get it I would only take it and cash it in and probably spend the money." In response to this suggestion she retained the ring. Plaintiff's version is that the defendant came to the office where she worked; that he took her home; denies that she offered to return the ring or that he told her to keep it; that she meant in the letter of February 7th by her decision that she had decided to give in to the defendant's whims and that she thought he would be happier if he knew about her changed attitude; that by .the discussion of future invitations mentioned in the postscript, she wanted to find out whether he was going hunting before

she accepted the invitations so she would not be embarrassed when he was unable to be present as had happened once or twice before.

We find nothing in the evidence which amounts to an unequivocal offer by the plaintiff to release the defendant from the obligation of his promise, nor do we find any acceptance of such an offer unless defendant's conduct in remaining away from the plaintiff after the interview in February amounted to an acceptance. Under the evidence the whole matter was for the jury. The making of the promise was undisputed. The defendant's claim that he asked the plaintiff to retain the ring and that they were to keep up appearances, that is, lead plaintiff's friends and family to believe the engagement was in effect, was certainly unusual, if the engagement was in fact broken by mutual agreement. While one may draw the inference that the parties may not have been well suited to each other from the fact that they had numerous differences and disagreements, none of which were of a very serious character, nevertheless if such an inference be drawn, it does not, so far as we are able to ascertain, constitute grounds for the refusal of defendant to perform. Matters of that kind should have been considered by the defendant before he entered into the contract. If he is satisfied that the person with whom he contracts is a suitable person, he may not lightly break his promise if the promisee is not everything that he had hoped for or expected. We are cited to no authority holding that mere disagreements or lovers' spats are grounds which justify the refusal to perform a promise to marry. See 62 A. L. R. note p. 846.

It is further alleged that the verdict was perverse and the jury was prejudiced. This is based mainly upon the amount of damages found by the jury. There is very little evidence as to the financial standing of the defendant except that he is a legatee and if he lives until July, 1934, he will

receive an inheritance valued at some $50,000 or $60,000. There is little in the evidence with respect to his present income or present worth. It appearing upon the trial that the plaintiff's trousseau was used by her for other purposes, the trial judge cured what he considered an error in instructing the jury that they might allow her the cost of her trousseau by striking $1,000 from the verdict.

We cannot say that the verdict was so excessive as to show perversity on the part of the jury. In *Kellett v. Robie, supra,* the evidence was that the defendant was worth about $6,000 and the jury awarded the plaintiff $3,500 damages, which was held excessive. While it may be true that the legacy is contingent upon the defendant living until July, 1934, the legacy is a potential asset which the jury had a right to take into consideration in fixing plaintiff's damages. On principle we see no difference between that and probable future earnings or other advantages which might have accrued to plaintiff from the defendant had he performed his contract but were contingent upon his survival.

*By the Court.*—Judgment affirmed.