TOUCHETT, Appellant, vs. E Z PAINTR CORPORATION, Respondent.*

*March 31—May 5, 1953.*

*Motion for rehearing denied, with $25 costs, on July 3, 1953.

For the appellant there was a brief by *A. D. Sutherland,* and oral argument by *Mr. Sutherland* and *Mr. Jerold E. Murphy,* both of Fond du Lac.

For the respondent there was a brief and oral argument by *John P. McGalloway* and *Nicholas J. Lesselyoung,* both of Fond du Lac.

FRITZ, C. J.   In lieu of the third cause of action, plaintiff gave notice that he desired to amend his complaint by alleging a fifth cause of action for reformation of two contracts or writings entered into between the parties on October 23, 1948, and on January 5, 1949, which were the result of conferences held between the parties. Because of plaintiff's proposal to set up a fifth cause of action for reformation, the court granted a continuance to plaintiff to set up said cause of action in an amended complaint. The trial subsequently held was limited solely to the fifth cause of action concerning the reformation of said contracts; and as that is a matter cognizable by a court of equity, it was tried by the court without a jury.

Plaintiff's fifth cause of action is based upon an allegation by plaintiff that by mutual mistake said contracts of October 23, 1948, and January 5, 1949, do not correctly state in their terms, as reduced to writing, the actual agreements entered into between plaintiff and the defendant corporation. There was no suggestion in regard to the fifth cause of action that said contracts were reduced to the written form in which they appear, by reason of any fraud on the part of the defendant.

As stated by the trial court:

"The specific points upon which the plaintiff Lawrence Touchett seeks reformation of the contracts in question may

be stated briefly as follows: (1) To reform paragraph 3 (a) of the contract of October 23, 1948, which as reduced to writing and signed by the parties reads: 'The assignment to Touchett of all of the corporation's claims against the E Z Paintr Company of Canada,' so that as reformed it will provide and read: 'The assignment to Touchett of all of the corporation's claims to the E Z Paintr Company of Canada.'

"(2) To reform paragraph 3 (b) of said contract, which as reduced to writing and signed by the parties reads: 'The transfer to Touchett of inventory (finished, unfinished, or partly finished) and machinery of the corporation, the net value of which shall be the difference between $5,000 and the book value of the claims assigned pursuant to (a) of this section;' so that as reformed it will provide and read: 'The transfer to Touchett of inventory (finished, unfinished, or partly finished) and machinery of the corporation, the net value of which shall be the difference between $5,000 and the net worth of the business known as E Z Paintr Company of Canada.'

"(3) To reform paragraph 5 (b) of the said contract of October 23, 1948, and paragraph 3 of the contract of January 5, 1949, which as reduced to writing and signed by the parties contain a provision precluding Touchett 'from manufacturing or selling, or causing the manufacture or sale of any of the items covered by the patents (above referred to), or of any paint rollers or paint trays substantially similar to the items covered by said patents, provided only that Touchett shall be entitled to manufacture such items upon the request and order of the corporation' so that as reformed such provision in each of the said contracts will provide and read: 'Touchett shall be precluded from manufacturing the products referred to except that he may manufacture such products only for the E Z Paintr Company (defendant herein) and said corporation will purchase all of said products which it sells from Touchett (plaintiff herein) unless said Touchett shall be unable to do so and that Touchett agreed to manufacture the items referred to as ordered.'

"(4) To reform the provisions of the contracts of October 23, 1948, and January 5, 1949, which refer to royalty payments to be paid to the plaintiff by the defendant corporation and which provide for the payment to Touchett by the

corporation as a 'monthly royalty, of a sum equal to two per cent of the corporation's gross sales of patented paint rollers and paint trays, or \$250 a month, whichever sum shall be the greater' so that as reformed such contracts will each provide and read: 'For the right and privilege of manufacturing and selling such products the company [referring to the defendant company] agrees to pay to Touchett a sum equal to two per cent of the corporation's or its sublicensee's gross sales.'

"(5) To reform paragraph 5 (c) of the contract of October 23, 1948, and the first paragraph on the second page of the contract of January 5, 1949—the latter paragraph being what probably could be referred to as paragraph 5 of the contract of January 5, 1949,—which paragraphs, as reduced to writing and as part of said contracts signed by the parties, read: 'Authority to sublicense other persons, firms, corporations, or associations for the manufacture of and sale of any items covered by the aforesaid patents' so that as reformed such contracts will each provide and read: 'The corporation (defendant) shall have authority to sublicense other persons, firms, corporations, or associations for the manufacture of any items covered by the patents referred to only in case Touchett shall, through causes beyond his control, be unable to do so.' "

Upon conclusion of the trial, the court stated that in so far as the fifth cause of action is concerned—it was predicated entirely upon an allegation of mutual mistake of the parties in the drafting of the contracts of October 23, 1948, and January 5, 1949. The court stated also: "It is suggested now by the plaintiff in his brief and in his reply brief that while no claim of fraud is contained in the written pleadings setting forth his fifth cause of action, the court in the exercise of its equity jurisdiction has the authority to consider the pleadings amended so as to set up fraud as a ground for reformation in the respects sought. In this regard the court agrees with counsel for the plaintiff. All of the facts which indicate or might indicate either mutual mistake or mistake on the part of one party and fraud on the part of the other, have been fully produced before the court so far as

any such evidence is known to exist. While the strict rules of pleading appear to have been let down in practice, and while pleading may have become somewhat of a lost art, no reason is apparent to the court why it should not at this time consider—under all the evidence—whether any grounds for reformation exist in the instant case, either under the theory of mutual mistake, or mistake on the part of one party and fraud on the part of the other, and in determining this matter, the court will so consider the pleadings amended. . . . The rule may be stated briefly that reformation cannot be allowed except upon the most positive and satisfactory evidence showing either fraud or mistake in committing an agreement to writing; that is, that there is either mutual mistake or mistake on the part of one party and fraud on the part of the other. The proof must be clear, plain, convincing, and beyond reasonable controversy that by fraud or mistake the true contract was not presented in writing. . . . There is a further rule of law that the court will not insert a provision in a contract which was omitted with the consent of the parties asking for reformation, although such consent was given in reliance on an oral promise of the other party that the omission would not make any difference. A further elementary rule of law is that a court, even in an equitable action seeking reformation, cannot make for the parties a contract upon which there has been no meeting of the minds, or make for the parties a contract covering elements which have been entirely overlooked by the parties themselves. Such omissions may result in misunderstandings or disagreements between the parties, and they may be the source of eventual lawsuits, regretful as such consequences may seem. However, such differences are to be resolved in an action at law and not in an action in equity seeking reformation."

Plaintiff's first and second contentions in respect to his fifth cause of action are not before the court on this appeal. In his third contention of the fifth cause of action, plaintiff maintains that the true agreements entered into between the

parties to said contracts of October 23, 1948, and January 5, 1949, were to the effect that Touchett was to do all of the manufacturing of said patented articles which defendant might require in order to fulfil its sales requirements and needs. This has not been established by the necessary and required degree of proof.

As the trial court stated in that regard:

"The court may state that it is quite inconceivable to it that such an important feature of a contract should have been overlooked by either of the parties or should not have been reduced to writing. This is not a situation where the defendant corporation by its representatives was taking advantage of the plaintiff as an ignorant or unskilled individual. On the contrary, the plaintiff by his manner of answering questions at the time of the trial, as the court observed him then, evidenced that he was familiar with business practices and that he would not be an easy victim of overreaching or fraud on the part of another in a business transaction.

"The plaintiff was careful enough—when attending a number of conferences held between the parties leading up to and including the conferences held on October 23, 1948, and January 5, 1949,—the latter dates being also the days on which the respective agreements in question were signed by the parties,—to employ and have with him in attendance at such times, particularly on October 23, 1948, and January 5, 1949, his own counsel, Mr. J. E. Richter, a lawyer of some twenty years of experience. . . .

"If plaintiff's present contentions are correct, namely, that the plaintiff was to have the exclusive right to manufacture the patented articles required by the defendant corporation to fulfil its sales requirements and needs of such articles, the manufacturing profit therefrom which would inure to plaintiff—according to his own testimony—would be at least five times the amount which he receives under the terms of his royalty agreement of two per cent of the defendant corporation's gross sales of the patented articles in question. How the plaintiff or his counsel, or both of them, could have overlooked or failed to have such an important element included in the terms of the contracts in question, is quite inconceiv-

able to the court, if such subject had been part of an alleged verbal agreement between the parties.

"The only answer that the court can find is that at no time was there a meeting of the minds of the parties hereto that the plaintiff was to be—as he alleges—the sole manufacturer for the defendant corporation of the needs of the latter for the articles covered by the letters patent in question. . . .

"It occurs to the court that the plaintiff's contention now made that there was a mutual mistake on his part, or mistake on his part and fraud on the part of the defendant, in respect to the terms of the two contracts in question in so far as they fail to state that the plaintiff is to be the sole manufacturer of the patented articles in question is an afterthought and probably impelled by the fact that the defendant corporation has now improved its financial situation and earning ability and has become a successful enterprise instead of being in the desperate financial straits in which it found itself prior to and at the time of the conferences leading up to the contract of October 23, 1948, and the subsequent royalty agreement of January 5, 1949. . . .

"Again the court concludes that the plaintiff has not established that he is entitled to reformation in his third contention for reformation under his fifth cause of action, nor can the court spell out of the testimony any conclusion that any agreement was ever reached between the parties that the plaintiff was to do all of the manufacturing for the defendant corporation in its requirements of the articles covered by the letters patent in question."

The trial court properly concluded that any royalty to be paid to plaintiff, in the event defendant sees fit to sublicense to others the manufacture and sales of articles covered by the letters patent in question, had never been the subject of an agreement or meeting of the minds of the parties; and that no fraud had been practiced by defendant upon the plaintiff in failing to incorporate any provision in respect thereto in the royalty-licensing agreement of January 5, 1949. Having made those findings, the court rightly concluded that there was nothing for the court to reform in that respect as to the contracts of October 23, 1948, or January 5, 1949.

*By the Court.*—Judgment affirmed.

The following memorandum was filed July 3, 1953:

FRITZ, C. J. (*on motion for rehearing*). We observe nothing in plaintiff's brief filed on his motion for rehearing which requires that we recede from our original holding. We consider, however, that counsel's erroneous construction of certain statements included by the trial judge in his memorandum opinion and quoted in ours merits a further word. It was not intended by us nor do we believe that it was the trial judge's purpose to suggest that there has been any misconduct or unethical practise on the part of plaintiff's attorneys. What we said was intended to be applied to the plaintiff, and not to his attorneys for whom we have the highest respect. We are of the opinion, also, that the learned trial judge meant no more.

*By the Court.*—The motion for rehearing is denied, with $25 costs.