LASKER and others, Appellants, vs. PATROVSKY, Respondent.*

*September 8—October 6, 1953.*

* Motion for rehearing denied, with $25 costs, on December 1, 1953.

For the appellants there was a brief by *Dougherty, Arnold & Waters* of Milwaukee, and oral argument by *Suel O. Arnold.*

For the respondent there was a brief by *Thompson, Gruenewald & McCarthy* of Oshkosh, and oral argument by *Marvin L. McCarthy* and *Robert R. Thompson.*

GEHL, J.    Plaintiffs contend that defendant was bound by the auctioneer's oral announcement at the sale that the premises could be used only for residence purposes, and that the representations made in the advertisement of sale fall out of the case.  They are right, and unless the execution of the first memorandum made after the premises were knocked down requires the application of rules defeating them, they should prevail.  In *Keske v. Boeder,* 168 Wis. 369, 170 N. W. 247, it was held that auction sales are subject to conditions announced by the auctioneer upon the opening of the sale, and that the conditions announced bind all bidders whether they in fact hear them or not.  To the same effect see *Clarke v. Maisch,* 171 Wis. 225, 177 N. W. 11.

No Wisconsin case has been called to our attention, nor have we been able to find one, in which was considered the question whether such oral announcement of conditions supersedes those contained in an advertisement or notice of the sale.  We may assume, without deciding the point, that they

do. See *Kennell v. Boyer,* 144 Iowa, 303, 122 N. W. 941; *Ashcom v. Smith,* 2 Penr. & W. (Pa.) 211, 21 Am. Dec. 437.

What is the effect of the memorandum made immediately after the premises were knocked down to the defendant? By its terms plaintiffs were required to furnish "good merchantable title . . . free and clear of all liens or incumbrances." It is the generally accepted rule that in the absence of fraud or mistake a written contract merges and incorporates all prior and contemporaneous negotiation in reference to the subject, and that it represents the whole bargain of the parties and the extent of their respective engagements. *Derbeck v. Albright,* 186 Wis. 515, 203 N. W. 337. No mistake or fraud is charged. The rule requires that we hold that the memorandum which is not attacked as being ambiguous in any of its terms takes precedence over all negotiations had before or contemporaneously with its execution, and that it represents the entire agreement of the parties. It requires that title free and clear of all incumbrances be furnished. Incumbrances do exist, and plaintiffs were unable to perform.

Plaintiffs cite *Clarke v. Maisch,* 171 Wis. 225, 177 N. W. 11, as authority for their contention that the announcement made by the auctioneer constitutes a part of the contract. The case is not authority for their contention. At the opening of a public sale of lots it was announced by the auctioneer that an abstract of title was at a bank for the use of bidders. The court said that the implication of the announcement was that no other abstract was to be furnished. A memorandum of sale was executed. It was silent as to abstract. Defendant's demand for a separate abstract was denied and upon that ground he refused to perform. The question, really the only one, was whether upon the sale of real estate there is upon the vendor an implied obligation to furnish the vendee an abstract. The court held that there is not.

It is suggested that Bohr was not authorized to execute the first memorandum on behalf of plaintiffs; that he exceeded

his authority in so doing. See *Kelly v. Holbrook,* 191 Mass. 565, 77 N. E. 1037. The answer to that is in the following:

The plaintiff, Seymour Lasker, appears to have been present at the sale representing all of them. He was accompanied by his attorney, a Mr. Berns. Bohr testified that "everything pertaining to the auction sale of the Lasker estate was in the hands of Mr. Lasker and his attorney, Mr. Berns." Defendant testified that there were present at its execution, among others, Bohr, Lasker, and Berns; that both Lasker and Berns assured him that he could use the property for any purpose. The presence of Lasker and Berns is not denied by either of them, but each denied that he or either had given the assurance claimed by defendant. There is quoted a question put to the attorney and his reply:

"*Q.* Isn't it a fact, Mr. Berns, that Mr. Patrovsky asked you, just prior to signing the contract, whether as a friend you would advise him to go ahead with it or whether he was getting into any trouble by signing the contract? *A.* Well, that was more or less the substance of what he had in mind and he tried to express, and I told him that inasmuch as he bought it at the sale I would advise him to sign the contract and put up the earnest money."

The mere presence of Lasker and his attorney at the execution of the memorandum in addition to the fact that they, or at least the attorney in Lasker's presence, not only discussed it but urged defendant to sign it, certainly constitutes a ratification of Bohr's act in preparing it. It was really more than ratification—it was participation.

The plaintiffs contend, however, that we must give effect to what we have designated as the second memorandum which, by reference to its attached paper, provides that the sale "is subject to . . . all restrictions and reservations appearing of record. . . ."

The court found upon satisfactory evidence that the conditions of sale attached to the second memorandum were not

attached to the first, and that defendant did not know of its existence.

Plaintiffs urge that the second memorandum is binding upon the defendant although not signed by him personally. It is true, as they contend, that for some limited purposes an auctioneer is deemed to be the agent for both parties at a public sale, particularly for the purpose of signing the contract. *Bamber v. Savage,* 52 Wis. 110, 113, 8 N. W. 609. It is said, however, in the *Bamber Case* that "the memorandum of the auctioneer, to bind the purchaser, must be contemporaneous with the sale." The first memorandum was signed by the defendant. It closed the transaction and terminated the proceedings. There was no occasion for the auctioneer to act on defendant's behalf thereafter. He had lost his status as defendant's agent. Consequently, the second memorandum has no binding effect upon the defendant.

It is contended by plaintiffs that the title offered is not unmerchantable; that the zoning ordinance and the restrictive agreements do not constitute incumbrances upon the land. As to the zoning ordinance they are correct. *Miller v. Milwaukee Odd Fellows Temple,* 206 Wis. 547, 240 N. W. 193; *Kend v. Herbert Finance Co.* 210 Wis. 239, 246 N. W. 311; 55 Am. Jur., Vendor and Purchaser, p. 705, sec. 250. The contrary is true, however, as to the restrictions as to the use of real estate placed thereon by agreement, and which impose more onerous burdens than those imposed by law. 55 Am. Jur., idem, p. 702, sec. 246.

The restrictions contained in the agreements here involved exceed those contained in the ordinance. They prohibit occupancy for any hospital or charitable use; the ordinance permits "philanthropic or eleemosynary institutions." They prohibit "clubs;" the ordinance permits private clubs and fraternities. They prohibit public amusement parks or grounds; the ordinance permits public parks and golf courses. They

prohibit railway termini; the ordinance permits railroad stations.

The provision in the agreements prohibiting any use inconsistent with the maintenance and preservation of the area as first-class residence property would prohibit use for cemeteries, churches, colleges, schools, gardening, farming, libraries, museums, nurseries, greenhouses, telephone and telegraph offices, all of which are expressly permitted by the ordinance. Some, if not all, of these uses permitted by the zoning ordinance would violate the provision of the agreements that the property shall be used only for first-class residence purposes. See Anno. 175 A. L. R. 1191.

The restrictions imposed by the agreements are incumbrances and prevent plaintiffs from giving a deed as is contemplated by the memorandum. Consequently, defendant was justified in refusing payment of the purchase price and is entitled to recover the down payment. *Neff v. Rubin,* 161 Wis. 511, 154 N. W. 976; *Genske v. Jensen,* 188 Wis. 17, 205 N. W. 548; *Goodman v. Kortsch,* 196 Wis. 70, 219 N. W. 354.

Plaintiffs contend that the court erred in entering judgment of $15,000 against them. They urge that Bohr when he received the $20,000 from the defendant acted as agent for both the owners and the buyer, and that since the former did not receive the $15,000 which apparently Bohr retained, they should not be required to make good to defendant. The contention is without merit. It cannot be successfully contended that Bohr was without authority to receive the payment on behalf of the plaintiffs, 5 Am. Jur., Auctions, p. 452, sec. 9, nor do we find any authority to sustain any claim that an auctioneer, when he accepts payment, holds the money for the bidder.

*By the Court.*—Judgment affirmed.