BATAVIAN NATIONAL BANK OF LA CROSSE, Respondent, vs. S & H, INC., and another, Appellants.

*March 5—April 8, 1958.*

For the appellants there were briefs by *Bosshard & Arneson* and *Ray A. Sundet,* all of La Crosse, for S & H, Inc., and by *Robert J. Jenkins* of La Crosse, for Edward H. Langhofer, and oral argument by *Mr. Sundet* and *Mr. Jenkins.*

For the respondent there was a brief by *Bunge, Coleman, Moen & Meyer* of La Crosse, and oral argument by *John S. Coleman.*

BROADFOOT, J.   In a memorandum decision the trial court determined that there were no material issues of fact to be tried and that the case was governed by the decisions of this court in *Ratcliff v. Aspros,* 254 Wis. 126, 35 N. W. (2d) 217, and *Leider v. Schmidt,* 260 Wis. 273, 50 N. W. (2d) 233. The appellants claim that this case can be distinguished from the cases relied on by the trial court in that there was no ambiguity in the leases there considered and that therefore the rental could not be determined by the introduction of parol evidence, whereas in the present case they claim the rental can be ascertained as directed by the wording

of the lease, although resort must be had to parol evidence to find the exact and complete method of computing it. They claim there is a further distinction between the cases in that the *Ratcliff* and *Leider Cases* did not involve so drastic a remedy as summary judgment. The appellants contend that their answers and affidavits raised material issues of fact that can only be determined at a trial. They cite the language of paragraph numbered 2 wherein it states that rentals will be subject to revision and that any increase in rental will be conditioned upon sales and earnings of the lessee and increased expenses of the lessor. It is their contention that this language provides standards and procedures for determining the rent during the extended period of the lease, that these standards and procedures were discussed by the parties prior to and at the time of the signing of the lease, and upon the trial they could show by parol evidence that it was the intention of the parties that the term continue for six years after the date of the lease upon the same terms and conditions except for a possible adjustment of the rent as provided therein.

We cannot agree that the language referred to prescribes standards and procedures even to determine increased rent. It refers to both sales and earnings of the lessee without stating which is to govern or what percentage thereof is to govern. The same is true as to reference to increased expenses of the lessor. A lessor's expenses are many and varied. In addition thereto the option provision states that the extended period is to be "upon such terms and conditions as the lessor and lessee may agree upon." "Terms and conditions" include many things in addition to rent.

The appellants contend that the language of the lease is ambiguous in that it is susceptible of more than one interpretation and that they should be permitted to introduce parol evidence to show what was in the minds of the parties at the time of making the contract. They cite several defini-

tions of the word "ambiguous" and cases illustrative thereof. We can assume that the contract is ambiguous, but it does not follow that the ambiguity is such as to justify resort to parol evidence for the purpose of construing the language therein. In the name of construction, courts cannot insert what has been omitted or rewrite a contract made by the parties. We are not confronted here with a mere ambiguity but with an absence of essential provisions. To construe the extension provision would require a reformation of the contract or the making of a new one. It is presumed that after the parties negotiate the terms of a contract the negotiations are merged therein when written and signed.

In a few states the courts do give some effect to extension agreements such as appears in the lease in question and supply the missing terms and conditions by applying what they call "the rule of reason." The majority of states, however, hold that a lease must specify the terms and conditions of the renewal or extension so that the court may determine what has been agreed upon from the language therein, and if it falls short it is not enforceable. At the time of the decision in the *Ratcliff Case* this court gave careful consideration to the two rules and decided to adopt the majority rule. The two rules were again considered at the time the *Leider Case* was decided and the decision was to follow our prior determination and follow the rule announced in the *Ratcliff Case*.

The appellants take issue with a statement in the trial court's memorandum decision wherein it stated that both the lease and sublease were drawn by the attorneys for the defendant. The record shows a dispute on that point. However, we deem that to be immaterial, even though drawn by the plaintiff and subject to the rule that it be construed most strongly against the party drawing it. The sublease contained an extension agreement similar to that contained in the lease between the plaintiff and the defendant. However, the following clause was added:

". . . it is specifically understood and agreed that in the event the Batavian National Bank will not extend the lease now existing between it and the S & H, Inc., on the premises hereinbefore described, then said extension between the S & H, Inc., as lessor and Edward H. Langhofer as lessee is void."

The term of the sublease was from October 15, 1955, to the 14th day of September, 1958. The extension agreement covered an additional three years after that date. From the language used it is clear that both of the appellants understood the plaintiff would not have to, and might not, extend the lease from September 15, 1958, to September 15, 1961. We must hold, therefore, that the provision for extension of the lease is too indefinite and uncertain to be enforceable, and is void.

*By the Court.*—Judgment affirmed.