SORCE, Appellant, v. RINEHART and wife, Respondents.

*No. 492. Submitted under sec. (Rule) 251.54 June 5, 1975.— Decided June 30, 1975.*
(Also reported in 230 N. W. 2d 645.)

634

For the appellant the cause was submitted on the briefs of *David J. MacDougall, Thomas S. Hornig* and *Campbell, Brennan, Steil & Ryan, S. C.*, all of Janesville.

For the respondents the cause was submitted on the brief of *Nowlan, Mouat, Lovejoy, Wood & Cripe*, attorneys, and *Richard E. Rosenberg* of counsel, all of Janesville.

BEILFUSS, J. Three issues are raised in this appeal:

1. Is the offer to purchase contract unenforceable because there was no meeting of the minds on the consequences of breach by buyers?

2. Did seller's retention of earnest money estop him from suing buyers for specific performance or damages?

3. Does public policy require the denial of damages due to the breach of this contract?

The offer to purchase provides in part:

"Should the undersigned Buyer fail to carry out this agreement, all money paid hereunder shall, at the option of the Seller, be forfeited as liquidated damages and shall be paid to or retained by the Seller . . . ."

The only "money paid" under the offer to purchase was the $10 earnest money. The trial court specifically found, based upon the credible evidence, that the Rineharts "obviously believed that the $10 would be the limit of their obligation in the event of a breach."

This court, however, has held the precise offer to purchase clause here under consideration to have a quite different effect. As stated in *Moritz v. Broadfoot* (1967), 35 Wis. 2d 343, 346, 347, 151 N. W. 2d 142:

"It is apparent from the clause in question that it is the seller who has the option of taking the earnest money as liquidated damages in the event of the buyer's default. . . . It was not designed as an option to the buyer to pay liquidated damages as an alternative to performing the contract. The purpose of this clause is to protect the seller and not to provide an exculpatory method of avoiding the purchase of the real estate.

". . . In [*Zimmermann v. Thompson* (1962), 16 Wis. 2d 74, 114 N. W. 2d 116] . . . , we held that a liquidated-damages clause to be exercised at the seller's option did not foreclose the seller from seeking his actual damages, though he could not keep the earnest money as liquidated damages and in addition seek actual damages. It is equally true that the presence of a liquidated-damages clause does not prevent the injured party from seeking equitable relief as a complete alternative to damages. . . ."

It is apparent that what is involved is a mistake of law as to the legal effect of the document on the part of the Rineharts.

The general rule as to the effect on contracts of mistakes of law, especially when unilateral in nature, is stated at 17 C. J. S., *Contracts,* p. 900, sec. 145:

". . . Mere mistake of a party as to the legal meaning, scope, or effect of an instrument does not vitiate it; and a mistake of law made by one party to a contract does not excuse him from the obligations thereof, nor will ignorance of the law relieve one of the legal effect of his contract obligations." *See also: Birkhauser v. Schmitt* (1878), 45 Wis. 316.

There is a trend among the commentators toward disregarding distinctions between mistakes of fact and mistakes of law in determining the effect of the latter insofar as the enforcement of contract is concerned. 3 Corbin, *Contracts,* p. 752, sec. 616; 13 Williston (3d ed.), *Contracts,* p. 537, sec. 1581.

Even applying that more liberal approach, however, the Rineharts' misapprehension as to the consequences of their breach of the contract is without legal effect, since the mistake was not shared by Sorce. As stated in Restatement, 2 *Contracts,* p. 966, sec. 503:

"A mistake of only one party that forms the basis on which he enters into a transaction does not of itself render the transaction voidable . . . ."

As stated in *Chicago, St. P., M. & O. Ry. Co. v. Bystrom* (1917), 165 Wis. 125, 133, 161 N. W. 358, "[i]n order to reform a contract on the ground of mistake the general rule is that the mistake must be mutual, or mistake on one side and fraud on the other." That rule has been followed in *Langer v. Stegerwald Lumber Co.* (1952), 262 Wis. 383, 391a, 55 N. W. 2d 389, 56 N. W. 2d 512, and *Findorff v. Findorff* (1958), 3 Wis. 2d 215, 224, 88 N. W. 2d 327.

In the instant case, the mistake was clearly unilateral and there is no finding nor evidence of fraud.

We conclude, therefore, that the Rineharts' mistake as to the legal consequences of their breach did not justify

the reformation of the contract by restricting Sorce in his remedies to the retention of the $10 earnest money.

In its written opinion the trial court held that Sorce was estopped from suing for specific performance or damages because he failed to specifically disavow any intention to rely solely on the earnest money as liquidated damages. Such conclusion was based on this court's holding in *Zimmermann v. Thompson, supra,* regarding the interpretation of the same contract language under consideration here.

In *Zimmermann,* the seller, upon default by the buyer, retained the $500 down payment and brought suit for actual damages. On the seller's appeal from a lower court judgment dismissing its appeal, this court stated at pages 76, 77:

". . . The question is whether under the circumstances the contract confines the seller to liquidated damages, $500, or whether he may recover his actual damages, whatever they may be. The contract clause already quoted gives the seller an option to keep the down payment as liquidated damages. Such an option does not prevent the seller from waiving the forfeiture and bringing an action for his actual damages, as appellant submits. However, there is more here than a simple forfeiture. '. . . at the option of the seller [the $500 may] be forfeited as liquidated damages and shall be paid to or retained by the seller, . . .'

"This gives the seller an option to take liquidated damages or to take whatever actual damages he can prove, but it does not give him the right to both. If he chooses liquidated damages he may retain the down payment without further fuss or bother. If he chooses actual damages the contract gives him no additional present, simultaneous, right to retain the down payment. He has retained it and is now trying to expand the limited right of retention into a right to keep the money and apply it on whatever larger damages he can establish. The contract does not so provide.

"Under this contract that part of the down payment in excess of broker's commissions or disbursements, as specified by the contract clause in question, can be right-

fully retained by the seller only in accordance with seller's option to take liquidated damages. It can neither be assumed that the seller has retained the money without right, nor that he has acquired additional rights by a wrongful retention. The seller has kept the money as he rightfully may do, but he can do so only by recognizing it as liquidated damages. Thereby he exercised his option to treat the cash in his hands as liquidated damages. Accordingly, no cause of action for actual damages remains to him."

Subsequently, however, in *Moritz v. Broadfoot, supra,* this court was faced with a situation in which the seller retained a $1,000 earnest-money check and notified the defaulting buyer that he was electing to consider the $1,000 "as a payment on account of the purchase price" and not as liquidated damages. The seller then commenced an action for specific performance. In upholding the seller's right so to do, we stated at pages 349, 350:

"*Zimmermann* is precedent for the situation wherein the seller accepts the breach of contract and sues the defaulting buyer for damages. It is not precedent for the instant case, where the seller has elected to stand on his contractual rights and to seek specific performance. We have recently said:

" 'Under this remedy the vendor elects to affirm the contract by having the property auctioned at judicial sale.' *Kallenbach v. Lake Publications, Inc.* (1966), 30 Wis. (2d) 647, 651, 142 N. W. (2d) 212.

"The general rule as stated in Corpus Juris Secundum is in accord: 'The vendor by bringing an action for the purchase price affirms the contract.' 92 C. J. S., Vendor & Purchaser, p. 450, sec. 477.

"Hence, we see no inconsistency in the retention of the earnest money and the action to specifically enforce the sale contract. Under these circumstances the liquidated-damages clause is irrelevant. The seller does not seek damages but his purchase price. It would be highly inconsistent to require the seller to yield up the earnest money which was intended as part payment and then to sue at equity to get the same funds back also as part payment. This is entirely different than the situation where

the seller stands on the liquidated-damages clause to get his damages without 'fuss and bother' and, in addition, tries to get whatever other damages he could prove. Such would be highly inequitable and beyond what the parties had bargained for. Here, however, the seller seeks only what he and the buyer have agreed that he is entitled to—the purchase price. To sue in specific performance to affirm the whole contract and to enforce the full payment, he is not required to forego what he has already obtained under that contract."

In this case, Sorce's action was originally for specific performance and it was only pursuant to stipulation with the Rineharts, in an attempt to mitigate damages, that Sorce sold the property to a third party and decided to content himself with recovery of the costs incurred in so doing. Thus, we hold that this case is controlled by *Moritz* rather than *Zimmermann*.

The trial court, in its opinion, suggests that the instant case is distinguishable from *Moritz* because of the notice of election involved in the latter case. While the language from *Moritz* cited above does not seem to so restrict its holding, it is clear that the summons and complaint served in the case at bar comprised as timely and effective a notice as was involved in *Moritz*. The summons and complaint in this case, which in requesting specific performance alleged the receipt of the $10 and demanded title to the Rineharts' home and the payment of $44,990, was served on January 10, 1973, just six days after the agreed-upon closing date.

We hold, therefore, that Sorce was not estopped from commencing this action.

Finally, the Rineharts contend that due to the alleged inequality of bargaining power and adhesive nature of the contract involved, they should not be held to the terms of their agreement.

We conclude, however, that the facts of this case do not merit such relief. The disputed language clearly pro-

vides that the earnest money was to be treated as liquidated damages "at the option of the Seller." Both Mr. and Mrs. Rinehart read the offer to purchase before they signed. Both fully intended to perform at that time. Mr. Rinehart, by his own admission, told Sorce that he thought he knew what he was doing. The Rineharts were both business persons and had been previously involved, both as buyers and sellers, in numerous real estate transactions. The terms of the offer to purchase were fully negotiated between the parties.

These facts do not amount to a situation wherein the positions of the parties are so unequal as to require refusal of enforcement of the contract and resulting damage.

*By the Court.*—Judgment reversed and cause remanded for a determination of damages.