ST. NORBERT COLLEGE FOUNDATION, INC., Plaintiff-Respondent, v. McCORMICK, Defendant-Appellant and Third-Party Plaintiff: PREMONSTRATENSIAN FATHERS, Third-Party Defendant-Respondent.

*No. 75–657. Argued September 2, 1977.—Decided January 3, 1978.*
(Also reported in 260 N.W.2d 776.)

424

For the appellant there were briefs by *Kaftan, Kaftan, Kaftan, Kuehne & Van Egeren, S.C.* and oral argument by *J. Robert Kaftan,* all of Green Bay.

For the respondent there was a brief by *Lester S. Clemons, Frank J. Daily* and *Quarles & Brady,* and oral argument by *Messrs. Clemons* and *Daily,* all of Milwaukee.

ROBERT W. HANSEN, J. While the defendant in his brief on appeal lists eight issues, the last one of which he subdivides into six separate challenges to the judgment, we find the following to be dispositive.

*LACK OF CONSIDERATION.*

The agreement of the parties challenged here is their buy-sell agreement of October 8, 1965. By the terms of that contract, defendant agreed to sell and plaintiff agreed to buy certain shares of Proctor and Gamble stock. Defendant contends that such sales contract is not enforceable because it lacks consideration. The contract was under seal, so consideration is presumed.[1] However, the presence of consideration is clear from the document. Defendant agreed to sell the stock. Plaintiff agreed to pay the stipulated price—$5,000 per year for life to the defendant. It is not the amount of consideration that determines the validity of a contract. As our court has held, ". . . a valuable consideration however small is sufficient to support any contract; . . . inadequacy of consideration alone is not a fatal defect."[2] The law concerns itself only with the existence of legal consideration because " '[t]he adequacy in fact, as distinguished from value in law, is for the parties to judge for themselves.' "[3] A consideration of even an indeter-

---

[1] Sec. 891.27, Stats. *See also: Farley v. Salow,* 67 Wis.2d 393, 402, 227 N.W.2d 76 (1975).

[2] *Rust v. Fitzhugh,* 132 Wis. 549, 557, 112 N.W. 508 (1907), quoted with approval in *Estate of Hatten,* 233 Wis. 199, 216, 288 N.W. 278 (1940).

[3] *Estate of Hatten, supra,* at 216, quoting from 7 Am. Jur., *Bills and Notes,* page 927, sec. 234.

minate value, incapable of being reduced to a fixed sum, can be sufficient to constitute legal consideration.[4] However, in the case before us, the dollar amounts to be paid annually for the life of the defendant were fixed by contract, and the attack upon the contract for lack of legal consideration fails.

## EXISTENCE OF AN ENFORCEABLE CONTRACT BETWEEN THE PARTIES.

In the defendant's view, the October 8 buy-sell agreement between the parties was not a contract at all, but "overall a promise to make a gift in the future, which is unenforceable."[5] In support of that contention the defendant asks this court to consider "the conduct of all of the parties and all of the writings."[6] The invitation to look at all the writings and all previous charitable transactions between the parties is declined. The written sales contract between the parties is full and complete, clear and unambiguous. As our court has held in such a situation, "It is presumed that after the parties negotiate the terms of a contract the negotiations are merged therein when written and signed."[7] Prior writings or promises not embodied in a written contract ". . . are deemed to have been abandoned, unless it appears that the parties did not intend that the writing should express the whole contract."[8] Since no ambiguity is claimed to be present in the written contract of the parties, there is neither right nor reason to resort to

---

[4] *Id.* at 216.

[5] Appellant's Brief at 23.

[6] *Id.*

[7] *Batavian Nat. Bank v. S & H, Inc.*, 3 Wis.2d 565, 569, 89 N.W.2d 309 (1958).

[8] *Milwaukee Cold Storage Co. v. York Corp.*, 3 Wis.2d 13, 24, 87 N.W.2d 505 (1958). *See also: Lasker v. Patrovsky*, 264 Wis. 589, 60 N.W.2d 336 (1953).

prior transactions between the parties to erase the written contract of the parties and substitute a promise to make a gift in the future in its stead.[9]

## REFORMATION OF CONTRACT.

Having held that the October 8 buy-sell agreement between the plaintiff and the defendant to be a valid contract, we reach the defendant's contention that the contract should be reformed to comply with the basic intentions of the parties.[10] A contract is not to be reformed unless there is a mutual mistake or a mistake by one party and fraud by the other.[11] For reformation there must be " '. . . the most positive and satisfactory evidence showing either fraud or mistake in committing an agreement to writing. . . .' "[12] The mistake, if fraud is not claimed, must be mutual.[13] " 'Mere mistake of a party as to the legal meaning, scope, or effect of an instrument does not vitiate it; and a mistake of law made by one party to a contract does not excuse him from the obligations thereof. . . .' "[14] There is no basis in the record for finding that the Foundation was mistaken either as to the factual basis or the legal effect of the buy-sell contract. The record establishes a change of heart on the part of the defendant after the buy-sell contract was executed. But the defendant's testimony

[9] *See: Fun-N-Fish, Inc. v. Parker,* 10 Wis.2d 385, 103 N.W.2d 1 (1960).

[10] Appellant's Brief at 27.

[11] *Source v. Rinehart,* 69 Wis.2d 631, 638, 230 N.W.2d 645 (1975).

[12] *Frantl Industries v. Maier Construction, Inc.,* 68 Wis.2d 590, 594, 229 N.W.2d 610 (1975), quoting from *Touchett v. E. Z. Paintr Corp.,* 263 Wis. 626, 630, 58 N.W.2d 448, 59 N.W.2d 433 (1953).

[13] *Source v. Rinehart, supra,* at 638.

[14] *Id.* at 638, quoting from 17 C.J.S., *Contracts,* page 900, sec. 145 (1963).

that he relied upon the interpretation of the contract given him by Everson, his attorney and friend (an assertion denied by Everson himself) is no basis for a claim of mistake. The mistake claimed is not mutual. Even if McCormick was mistaken, there is no evidence whatsoever that the Foundation's intentions varied from the terms of the written contract. Therefore there is no basis in the record of this case for reformation of the buy-sell contract entered into by this plaintiff and this defendant.

## REVOCATION OF THE TRUST.

Focusing upon the trust agreement between himself as grantor and himself as trustee, the defendant argues that he "revoked the trust agreement and pledge, notified plaintiff and made them a nullity."[15] Under the trust agreement the defendant as grantor was to transfer to himself as trustee 7,000 shares of Proctor and Gamble stock to be held in a revocable trust under the conditions set forth in the agreement. Under the subsequent buy-sell agreement the defendant as trustee agreed to sell to the plaintiff the 7,000 shares of stock on January 2, 1971. Thus, as to the defendant's claim that the entire transaction was revoked, the first question is whether the trust was revoked before the sale date of January 2, 1971.

The trial court found that the trust was not revoked by the defendant grantor until after January 4, 1971. The defendant offered evidence of an earlier revocation of the trust agreement in compliance with its requirements for revocation. It is enough here to note that the trial court did not believe the evidence offered and its reasons for rejection of the claim of a trust revocation prior to January 2, 1971, were clearly stated in its

[15] Appellant's Brief at 34.

memorandum decision. The trial court was not required to accept the claim that a trust revocation notice was executed on February 21, 1969. The test on review is not whether this court would have accepted the testimony as to a timely revocation of the trust. The test as to the finding of fact made by the trial court is whether or not it is contrary to the great weight and clear preponderance of the evidence.[16] It is not. It follows that the factual determination made by the trial court must be accepted by this court on review.

Our upholding the trial court's finding of fact that the trust agreement was not revoked until after the date of sale, January 2, 1971, makes it unnecessary to consider what effect a timely revocation of the trust agreement would have on either the validity of the October 8 buy-sell agreement or the personal liability of McCormick on the agreement which he entered into as trustee.[17]

## RESCISSION OF THE CONTRACT.

As a final challenge to the validity of the October 8 buy-sell agreement, the defendant claims that "any agreement between the parties was canceled and rescinded."[18] The defendant relies upon the return by Father Burke

[16] *Stueck v. Le Duc,* 57 Wis.2d 735, 741, 205 N.W.2d 139 (1973), citing *Milbauer v. Transport Employes' Mut. Benefit Society,* 56 Wis.2d 860, 862, 203 N.W.2d 135 (1973); *Resseguie v. American Mut. Liability Ins. Co.,* 51 Wis.2d 92, 105, 186 N.W.2d 236 (1971); *Weed v. Lepianka,* 30 Wis.2d 198, 205, 140 N.W.2d 305 (1966); *Mitchell v. Western Casualty & Surety Co.,* 30 Wis.2d 419, 141 N.W.2d 212 (1966).

[17] *See: Gates v. Avery,* 112 Wis. 271, 276, 277, 87 N.W. 1091 (1901), quoted with approval in *Arnold v. Randall,* 121 Wis. 462, 468, 98 N.W. 239 (1904). *See also: Taylor v. Davis,* 110 U.S. 330, 334, 335 (1884); Bogert, *Trusts and Trustees* (2d ed. 1960), sec. 712, page 445; 3 Scott on *Trusts* (3d ed. 1967), sec. 262, pages 2221–2223.

[18] Appellant's Brief at 36.

to the defendant of one of two duplicate-originals of the buy-sell agreement prior to the date of sale and at the request of the defendant. A contract may be rescinded by express agreement or the rescission may be inferred from the acts of the parties.[19] Whether an agreement to rescind may be inferred from Father Burke's compliance with Mr. McCormick's request to return the executed original, in view of all the circumstances and acts of the parties, is a question of fact for the finder of fact.[20] In the case before us, the trial court found that the plaintiff did not acquiesce in a rescission of the buy-sell agreement. There is dispute in the testimony as to why the Foundation returned to McCormick one of two duplicate-original copies of the buy-sell agreement in its possession. Father Burke testified that he thought Mr. McCormick wanted the agreement to make a codicil to his will, that he gave this explanation to the board of directors, and that was why the directors voted to comply with the demand. The finding by the trial court that the plaintiff did not acquiesce in a rescission of the buy-sell agreement is not against the great weight and clear preponderance of the evidence in the record. It stands and ends defendant's claim of rescission of the buy-sell agreement by the parties to it.

For the sake of completeness, we note the defendant's objections to the trial court's finding concerning the role and the testimony of Fountain, the defendant's tax advisor, and Everson, the attorney present at the time of execution of the buy-sell agreement. On all issues raised, we affirm the trial court's findings of fact and

[19] *Alexander Hamilton Institute v. Hart*, 180 Wis. 90, 96, 192 N.W. 481 (1923).

[20] *Id.* at 96. *See also: Ewert v. Hammer*, 212 Wis. 647, 250 N.W. 824 (1933); *Deno v. Hersh*, 158 Wis. 502, 149 N.W. 145 (1914); and *Kellett v. Robie*, 99 Wis. 303, 74 N.W. 781 (1898).

conclusions of law. It follows that the judgment appealed from is affirmed.

*By the Court.*—Judgment affirmed.

BEILFUSS, C.J., and HEFFERNAN, J., took no part.

ABRAHAMSON, J. *(dissenting)*. The trial court looked at each instrument and each isolated event in the history of the dealings between the parties and concluded that McCormick had a contractual commitment which he failed to keep. The trial court's analysis is sound on its face, and the trial court's conclusion inevitably follows from the analysis. I dissent, however, because upon reading the entire record and looking at the case in its entirety—instead of as a series of isolated events—the conclusion I reach is that the parties intended a gift—not a binding agreement.