## GERALD E. FOSBROKE v. NATIONAL EXCHANGE BANK IN ST. PAUL.[1]

February 1, 1929.

No. 27,071.

See note in 44 L. R. A. 599, 611; 4 R. C. L. 303; 1 R. C. L. Supp. 1112; 4 R. C. L. Supp. 261; 5 R. C. L. Supp. 236.

[1]Reported in 223 N. W. 603.

*Walsh, Jackson, Walsh & Yackel,* for appellant.

*Harvey O. Sargeant,* for respondent.

WILSON, C. J.

Defendant appealed from an order denying its alternative motion for judgment non obstante or a new trial.

Defendant, through one Joseph J. Hennen, listed a farm for sale with several agents, including plaintiff who submitted an offer of $19,000 cash from one Holcomb. On February 14, 1927, Hennen, acting for defendant, unqualifiedly accepted the offer. Plaintiff seeks to collect a commission.

In an action of this character such an offer and acceptance does not in law contemplate a written contract. It created the duty of the agent to present his purchaser with the money. He did not earn his commission by merely conveying the offer to defendant.

Plaintiff did not have the exclusive agency, and he did not give the seller an opportunity to consummate the cash sale. Nor did he bring to the seller an enforceable contract with the buyer. He did not do anything which in law would stay defendant from selling to another without becoming liable to plaintiff. Under this kind of a listing and until plaintiff earned his commission, defendant had a right to sell to others with impunity; and, having done so on February 23, before plaintiff presented his purchaser, it did not become liable to plaintiff who, by the very nature of his contract, had taken his chances on producing a buyer in advance of his competitor.

But the plaintiff seeks to avoid the consequences indicated by showing that the parties mutually agreed to enter into a written contract. They did so agree. We may assume as plaintiff urges that defendant agreed to prepare one. Plaintiff apparently takes the position that he has earned his commission because defendant, as he says in substance, was guilty of delay in the preparation of the contract.

Clearly the parties intended to have a written contract. What was it to contain? There was no agreement as to the terms or con-

ditions thereof. Defendant had not agreed to make any certain contract to which plaintiff's customer had assented. Not having committed itself to the making of a definite contract defendant's delay, if any, in preparing a contract, which was a mere step in the negotiations for the purpose of ultimately reaching a contractual relation, did not create a new contract with plaintiff and did not take away defendant's right to sell to others at any time. Indeed each party did in fact prepare a proposed contract. Quite naturally, in the absence of an agreement as to what was to be put in the contract, they were not alike but were materially different. A cash sale is a simple transaction. The making of an earnest money contract such as the parties here contemplated is more difficult and involves the adjustment of numerous matters, including amount of earnest money, time for making deferred payments, interest, possession, abstract, investigation of title and time for removing defects of title, place for delivery of deed, etc. The parties were silent as to all these things.

Was Holcomb unconditionally willing to execute such reasonable contract as the seller might properly demand? In prior negotiations defendant accepted Holcomb's offer of $20,000 for this farm. Defendant then prepared a contract very similar to the one it prepared as above mentioned. Holcomb took it to a Wisconsin lawyer and personal friend, who advised him not to sign it. Aside from the form and substance, the lawyer told him the price was too high. Holcomb refused to go further. Upon the trial he testified that he would not have signed any contract for the purchase of this farm through plaintiff unless it was first approved by his Wisconsin counsel. Plaintiff also testified that the contract had to be one that was satisfactory to Holcomb's attorney. This approval was not limited to legal form. Would Holcomb's personal friend and counsel have approved such a contract as the seller might have reasonably prepared? We do not know. Whether plaintiff had a purchaser who would execute a satisfactory contract depended upon the contingency of the approval of the buyer's counsel. That is insufficient. No effort was made to show what he would have ap-

proved; and we need not discuss the probability of disapproval based upon past experience. Holcomb was not unconditionally willing and ready to execute such contract as the seller might properly demand.

Before the agent is in a position to demand his commission he must bring the minds of the buyer and seller to an agreement for a sale and the price and terms upon which it is to be made. Until that is done the commission does not accrue. In this case the plaintiff under his agency could earn his commission in one of three ways: (1) By presenting the cash buyer with his money ready and willing to carry out the accepted proposition; (2) by presenting his buyer willing, ready and able to buy upon terms and conditions agreed upon; or (3) by becoming the procuring cause of the parties' executing an enforceable contract for the sale and purchase of the farm. He did none of these.

The order is reversed with directions to enter judgment for defendant.

