KERMIT H. SEVERSON, d.b.a. CARDEL COMPANY, v.
P. C. FLAHERTY.

84 N. W. (2d) 660.

August 2, 1957—No. 37,126.

*Joseph P. Johnson,* for appellant.
*Robins, Davis & Lyons* and *Bernard Rosenberg,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court denying defendant's motion for judgment notwithstanding the verdict or in the alternative for a new trial.

This action was brought by Kermit H. Severson as owner of the Cardel Company, a real estate brokerage business herein referred to as plaintiff, to recover a commission for allegedly having found a pur-

chaser for the business of one P. C. Flaherty, the defendant herein, pursuant to an agreement between the parties. Defendant introduced no evidence and the testimony consisted of cross-examination of Severson and a Mr. Hector, a sales agent of plaintiff. The case was tried before a jury, which returned a verdict in favor of the plaintiff in the sum of $5,000. Thereafter defendant moved the court for judgment notwithstanding the verdict or in the alternative for a new trial, which motion was denied, and an appeal was taken from that order.

The defendant operates bowling lanes in the city of St. Paul and has considered selling the business since about 1936. He had contacts with different brokers concerning the sale of his business during the past ten years and had written the predecessor of the Cardel Company about a sale in 1950. In 1953 he entered into a 6-month exclusive-listing contract with plaintiff whereby the latter would try to sell the business for $100,000 with $90,000 net to defendant.

Although the plaintiff tried to negotiate a sale the contract ended before a purchaser was found. Hector informed defendant during the course of the contract that the price defendant was asking was too high. During the summer of 1954, after the listing contract expired, plaintiff continued to make attempts to sell the business.

In January 1955, during a conversation between Hector and defendant with reference to the possibility of the asking price being too high, defendant requested Hector to "Bring me an offer." Hector then obtained plaintiff's authority to reactivate the listing and advertise the business. Four different individuals or groups expressed interest in the business, and two groups, one of which was a Mr. Hathaway and a Mr. Almquist, were shown the premises. Hathaway and Almquist met the defendant and, although they did not discuss the sale at that time, they subsequently asked for additional information and prepared a form requesting information for defendant to fill out which was submitted to him by Hector. After defendant had completed the form, it was picked up by Hector and transmitted to Hathaway and Almquist. The latter then expressed a desire to make an offer and plaintiff and Hector went to defendant to discuss this possibility and see what amount defendant would consider as a sale price. The sum of $65,000 was mentioned by Hector who testified that defendant said in

this connection, "Well, at least we are getting somewhere now."

The next day, Saturday, February 12, 1955, plaintiff and Hector came to defendant's place of business with a signed offer (exhibit D) from Hathaway and Almquist in the sum of $75,000 together with an earnest money check for $1,000 payable to plaintiff. Hector, plaintiff, and defendant then went to the Criterion restaurant to discuss the offer during lunchtime. The offer and earnest money check for $1,000 were shown to defendant at that lunchtime meeting for the purpose of having him look them over to determine if they were acceptable.

The signed offer from Hathaway and Almquist for $75,000, payable over a period of years, was subject to the following conditions:

(1)  That the defendant agree to negotiating bowling contracts with the 1955-1956 bowling leagues;

(2)  That the defendant agree not to enter into competition with the purchasers for five years within a radius of ten miles;

(3)  That the buyers receive a lease or assignment of a lease for a period of five years with an option of five years additional, with a rental of not to exceed $7,200 per year;

(4)  That the offer was conditioned upon a pro rating of the rent and utilities as of June 1, 1955, and upon the defendant agreeing to deliver possession to the purchasers not later than June 1, 1955.

The defendant refused to accept this offer, giving as his reason at one point in the record that he wanted his lawyer to check the legality of the offer—"if my attorney says, 'Sign that,' I would have signed it." At another point he stated that he wanted to consult his family, landlord, and lawyer.

In any event there was a further discussion in the matter as it appears that defendant wanted $75,000 net to him and that he suggested an $80,000 sale price. Hector testified that, after some discussion between plaintiff and Mr. Hector with reference to the commission, they decided that they would accept $5,000 and that plaintiff "drew up a new purchase agreement on the $80,000.00 figure." (Exhibit E.) Plaintiff claims that the only discussion prior to the drafting of the $80,000 purchase offer (exhibit E) was the purchase price and commission to be paid the plaintiff. While defendant and Hector were

absent for a short time from the table where they were seated plaintiff prepared the new $80,000 purchase offer (exhibit E). When defendant and Hector returned to the table plaintiff had completed the document and he gave it to defendant to sign, but the latter refused to do so until he had it examined for legality by his attorney.

Defendant testified that he regarded the $80,000 offer to be presented to the purchaser as a proposal and not to be binding upon him. Although plaintiff drew both papers and there was no testimony concerning defendant's dissatisfaction with other terms and conditions of the first offer, except the price, the second one varied from the proposed purchasers' original offer in the following respects:

1. The purchase price was to be $80,000 instead of $75,000 as in the first offer.

2. Defendant did not agree to negotiate the bowling contracts.

3. Defendant did not agree to bar himself from competition with the proposed purchasers.

4. The rental called for a lease of five years with an option for five additional years with rent of $5,000 per year plus six percent of gross volume of business over $50,000 per year.

5. No date was set to pro rate rent and utilities.

6. The date of possession was not fixed.

7. Other matters concerning the method of payment of the $80,000 was left for future determination.

Plaintiff testified, however, that the terms and conditions of the first offer (exhibit D) were understood by the parties to be the basis of the sale and that the second document was to be used as a basis of the formal contract which would be drawn by defendant's attorney. There was also testimony that at this time defendant's property was listed with another broker but that defendant assured plaintiff he could get the listing back from the other company. After the meeting at the Criterion the parties returned to defendant's place of business where the plaintiff picked up defendant's lease and a sheet showing computation of the rental, and plaintiff and Hector went back to plaintiff's office.

Hector's testimony concerning what happened after reaching that

office is as follows:

"Q. What happened when you got back to your office?

\* \* \* \* \*

"A. I called up Mr. Almquist and told him we were close to the deal. I asked him if he would go the $80,000.00, and he said he felt that would be the price they would have to pay, and he would go the $80,000.00.

"Q. And did you then communicate that information to Mr. Flaherty?

"A. I called Mr. Flaherty and told him he was out of business, that Mr. Almquist would pay the $80,000.00, and he said he would arrange a meeting with his attorney to sign the papers \* \* \*."

Defendant testified that he received Hector's call and that he subsequently contacted his attorney. Plaintiff said that he had a phone talk with defendant's attorney concerning a meeting with the defendant and the attorney the following Monday for the purpose of drawing up the papers. He said that he arranged for such a meeting between the purchasers, defendant, and himself for the next Monday evening. At about 5:30 on Monday afternoon, prior to the meeting that evening, he said that he received a call from defendant's attorney, who was acting upon instructions from the defendant, and the attorney told him that the deal was off.

The real issue which we consider determinative of this case is whether as a matter of law the plaintiff produced purchasers ready, willing, and able to buy on defendant's terms.

With reference to this issue defendant claims that the evidence failed to prove that plaintiff's proposed purchasers were ready, willing, and able to buy the property upon the terms proposed by the defendant. He contends that the only evidence offered by the plaintiff that the latter had found and produced a purchaser ready, willing, and able to buy on defendant's terms was Hector's telephone call to Almquist, one of the proposed purchasers, to the effect that he "would go the $80,000.00." Defendant argues that there is no evidence of any further negotiations with the proposed purchasers, who were not witnesses, and that in view of the other evidence in the case it cannot

be assumed that when Almquist said he "would go the $80,000.00" that he agreed that he would purchase under any other terms than those he originally proposed.

Plaintiff contends that exhibit D was a fully integrated purchase offer which if it had been accepted would have led to the consummation of the proposed sale. He admits that defendant rejected the offer but claims that it was only because of the amount, and that thereafter any conversations between the parties were concerned *solely* with the amount of money to be paid for the business. He contends that no witnesses, including the defendant, testified to any other objection raised by the defendant to exhibit D, and that therefore it is plain that the plaintiff and defendant had agreed that the former was to obtain purchasers for defendant's business for $80,000 on terms and conditions outlined in exhibit D, and that plaintiff would be paid a commission of $5,000 for so doing.

In examining the evidence in the light most favorable to the plaintiff what we are really confronted with under the record here is whether, because there was no evidence to the effect that defendant was dissatisfied with anything in exhibit D except the price, the jury could conclude that if the plaintiff obtained a buyer who would pay the $80,000 the defendant would have to pay the commission.

In our opinion it was incumbent upon the plaintiff to produce affirmative evidence that the defendant was satisfied with everything in exhibit D except the proposed purchase price and that in the absence of such evidence the verdict cannot stand. Here we have a situation where plaintiff's own exhibit E, prepared by him, not only differs in the purchase price but in many other respects from the proposal contained in exhibit D which defendant rejected. Plaintiff argues, however, that with the exception of the proposed purchase price, which was increased from $75,000 to $80,000, that defendant agreed to all other terms and conditions outlined in exhibit D. He seems to base his argument on the claim that inasmuch as no witnesses, including the defendant, testified as to any other objections raised by the defendant that the jury was entitled to find that defendant was accepting all of the original terms in exhibit D except the purchase price.

We are compelled to disagree with plaintiff's contention. Clearly the

differences between the terms and conditions of exhibit D and exhibit E in addition to the purchase price should have been obvious to the jury. In the absence of any affirmative evidence that the defendant agreed to all of the terms and conditions outlined in exhibit D with the exception of the purchase price, it is our opinion under the record here that the evidence failed to prove that the plaintiff produced a buyer ready, willing, and able to buy defendant's property on the terms proposed by the defendant and that therefore the jury verdict must be reversed.

Here we have a situation where the defendant refused to agree to the terms of the offer to purchase contained in exhibit D. Exhibit E was then prepared by the plaintiff with many conditions contrary to the proposed offer in exhibit D. Plaintiff argued that any changes, except the purchase price, between the two documents was an inadvertent mistake or omission on the part of the plaintiff in preparing exhibit E. There was no evidence offered, however, that the proposed purchasers would be willing to buy on the terms outlined in exhibit E. The only evidence of a willingness to purchase was the testimony of the telephone conversation between Hector and Almquist that he "would go the $80,000.00."

Both parties cited Fosbroke v. National Exch. Bank, 176 Minn. 357, 223 N. W. 603. There the real estate broker, having an unexclusive agency for the sale of a farm, presented to the owner a cash offer which was accepted, but the broker did no more. We held that the plaintiff failed to establish the necessary facts to entitle him to a commission, which depended upon: (1) His presenting his ready and willing cash buyer with his money; (2) his presenting a buyer ready, willing, and able to buy upon agreed terms; or (3) his causing an enforceable contract to be executed by the parties.

In view of the conflict here it cannot be said that the plaintiff presented a buyer ready, willing, and able to buy on agreed terms or that he caused an enforceable contract to be executed by the parties.

Reversed and judgment ordered for defendant.