## TOM MAYBERRY AND ANOTHER v. DONALD E. DAVIS.

178 N. W. (2d) 911.

July 17, 1970—No. 42028.

*Erickson, Zierke, Kuderer & Utermarck* and *Elton A. Kuderer,* for appellants.

*Richards, Montgomery, Cobb & Bassford, Jon D. Jensvold,* and *Emmett F. Tighe,* for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Theodore B. Knudson, JJ.

OTIS, JUSTICE.

Plaintiffs have been awarded a verdict of $2,400 in an action to recover a real estate commission. The court granted a new trial and thereafter ordered judgment notwithstanding the verdict. Plaintiffs appeal from the judgment.

The subject of this litigation is a farm consisting of some 158 acres in Rosendale Township, Watonwan County. Title was in Waldron C. Davis, when he died December 21, 1965. His heirs and their undivided interests were as follows: His widow, Grace Corliss Davis, one-third; his son, Donald E. Davis, defendant herein, two-ninths; his daughter, Corliss Davis Wilfley, two-ninths; and a daughter, Winifred Davis Hover, two-ninths.

In August 1966, plaintiff Tom Mayberry approached defendant and his mother with a view to securing a listing for the sale of the farm. A nonexclusive oral agreement was reached by the parties by which defendant undertook to pay plaintiffs 5 percent or $2,400 if plaintiffs effected a sale which would net the estate $48,000.

In May 1967, plaintiffs produced two buyers, Melvin Hobbs and Howard Quick, who were ready, willing, and able to divide and purchase the farm in two tracts on the terms to which plaintiffs and defendant had agreed. By that time, the final probate decree had been entered and title had vested in defendant, his

mother, and two sisters. For reasons which are not clear, defendant's sisters did not sign the purchase agreements. In August 1967 defendant advised plaintiffs that the property was no longer for sale and in March 1968, the farm was conveyed to defendant and to one Lowell J. Hurley.

The only issue for determination is whether or not the fact that plaintiffs entered a listing agreement with defendant, knowing he was not vested with complete title, relieved defendant of his obligation to pay a commission if those having the remaining interests declined to join. We hold that defendant's inability to perform was not a defense. Accordingly we reverse.

In granting a new trial, the court relied on language in Fosbroke v. National Exch. Bank, 176 Minn. 357, 223 N. W. 603; and Rees-Thomson-Scroggins, Inc. v. Nelson, 276 Minn. 453, 150 N. W. (2d) 568. However, in the Fosbroke case, the court merely held that preliminary negotiations between the parties did not give rise to a commission where substantial conditions had not been agreed on when the property was sold through other channels. There, we said, among other things, that the broker "must bring the minds of the buyer and seller to an agreement for a sale and the price and terms upon which it is to be made." 176 Minn. 360, 223 N. W. 604. The trial court concluded that plaintiffs did not bring the minds of the sellers and the buyer to an agreement. However, as we view the law, it was not necessary to bring all of the owners and the buyers together as long as the broker produced purchasers who were willing and able to perform on the conditions prescribed by the particular owner who contracted with the broker. This principle was suggested in Sherwood v. Rosenstein, 179 Minn. 42, 228 N. W. 339, where we held that a wife's refusal to join in a conveyance did not deprive a broker of his commission to which the husband had agreed. There we said (179 Minn. 45, 228 N. W. 340):

"* * * But a seller's liability for a commission is necessarily determined by his contractual relations with his broker, and it is possible for him through his own conduct to subject himself

to liability even though he does not procure a contract enforceable against the purchaser. He may have to pay when he himself cannot perform."

It is fundamental that a broker may not be denied his commission merely because the transaction he has negotiated is not consummated for reasons beyond his control. Olson v. Penkert, 252 Minn. 334, 344, 90 N. W. (2d) 193, 201.

While there is a split of authority,[1] we are of the opinion that the better-reasoned cases permit recovery. Martin v. Ede, 103 Cal. 157, 37 P. 199, held that one who does not have full title may nevertheless obligate himself to pay a commission because the broker has a right to assume defendant has determined the question of title before making an agreement. One who contracts to sell what he doesn't own "without so guarding his agreement as to save himself, in case of failure to secure title to the thing he has authorized to be sold * * * cannot be heard to complain of the result of his own folly or lack of foresight." 103 Cal. 161, 37 P. 200.

The Supreme Court of Wisconsin in Grieb & Erickson, Inc. v. Estberg, 186 Wis. 174, 202 N. W. 331, held that it was a fair inference the principal had better knowledge of his ability to fulfill the contract than the broker had and permitted recovery although the broker knew his principal could not convey complete title.

Finally, a case similar to the matter before us is Cincinnati M & M Realty, Inc. v. Uckotter, 14 Ohio St. (2d) 31, 43 Ohio O. (2d) 45, 235 N. E. (2d) 719. There, as here, the defendant and his sister each had an undivided interest in real estate when defendant entered a listing agreement. The defendant sought to defeat the broker's recovery by claiming the broker knew the state of the title before securing a purchaser. The Ohio court

---

[1] See, Strahan v. Weiland (La. App.) 216 So. (2d) 169; Stevenson & Tomm v. Barnes (Okla.) 274 P. (2d) 531; Best v. Kelley, 22 Wash. (2d) 257, 155 P. (2d) 794; Management Clearing, Inc. v. Vance, 11 Ariz. App. 390, 464 P. (2d) 977.

held that the broker, having done what he was employed to do, had earned his commission and was under no obligation to contact the defendant's sister to induce her to complete the transaction.

We concur in the view that one who contracts with a broker to secure the sale of property which the principal does not own takes the risk of incurring an obligation to pay a commission if title cannot be perfected. It is not the duty of the broker to determine ownership unless he expressly agrees to do so. If the principal has reason to doubt his capacity to produce good title, he may not induce the broker to perform services which prove to be futile. The principal is in a better position than the broker to determine what imperfections there are and what signatures must be obtained to bring about a valid conveyance. Consequently, we hold that plaintiffs' knowledge of outstanding interests in other heirs was not a bar to recovering their commission. Accordingly the verdict is reinstated.

Reversed.

MR. JUSTICE KELLY, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.