**Ronald KLAWITTER and Raymond Christenson, d.b.a. Hector Realty, Respondents,**

**v.**

**Norman STRAUMANN, et al., Appellants.**

**No. 46687.**

Supreme Court of Minnesota.

June 17, 1977.

Kunz, Mueller & Kroening and Randall E. Kroening, New Ulm, for appellants.

Ronald D. Selander, Olivia, for respondents.

Heard before MacLAUGHLIN, SCOTT and STAHLER, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This is an appeal from an order denying a new trial in an action for a real estate brokerage commission. The case was tried to a jury in the district court of Meeker County. Following the return of a special verdict favorable to the plaintiff broker, the trial court ordered judgment in plaintiff's favor and denied defendant sellers' motion for a new trial. The defendants appeal. We affirm.

In the spring of 1974, Ronald Klawitter, a real estate broker in Meeker County, sent out a flyer to generate real estate listings. Norman Straumann, owner of a 200-acre farm, responded to the flyer by indicating an interest in selling his farm. Klawitter met with Straumann and his wife Marjorie on April 19, 1974. After several hours' discussion, an exclusive listing agreement was signed by the Straumanns and Klawitter. This agreement provided for a total sale price of $170,000, with $5,000 earnest money and $45,000 "On Possession." The agreement extended until September 1, 1974, and provided that if a sale was made before then, possession was to be given on March 1, 1975. The broker's fee was set at 5 percent "upon sale of said real estate."

Klawitter subsequently advertised the farm in local and non-local newspapers, and spoke to a number of interested buyers. In May 1974 Mr. David Schleusner expressed an interest in buying the Straumann farm, and on August 15 he and Klawitter executed an earnest money contract pursuant to which Schleusner paid $5,000 in trust to Klawitter. The terms of this contract differed in several material respects from the listing agreement, including a splitting of the down payment, the date of possession, and the term of the contract for deed. Although the Straumanns did not explicitly refuse this contract, they did not agree to it.

On August 27, 1974, Klawitter and Schleusner entered into a second earnest money contract, the terms of which complied with the listing agreement. The only variation between this contract and the listing agreement was the total price of the farm, which had been raised to $177,000 by oral agreement between Klawitter and Straumann. It was disputed whether this additional $7,000 (for tiling on the farm) was to be added to the total purchase price or to the down payment. Klawitter understood the former, while Straumann testified to the latter. The jury decided this issue in Klawitter's favor; the Straumanns do not contest this finding on appeal.

Klawitter delivered this second earnest money contract to the Straumanns around August 28, 1974. They did not accept or reject the offer at that time. By September 1, the expiration date of the listing agreement, the Straumanns had neither accepted nor rejected either of Schluesner's offers. Klawitter met with the Straumanns for the last time around September 6, when the Straumanns raised a number of matters not covered in the earnest money contracts. Although Klawitter indicated that there was room for negotiation on these matters and that they could be settled without great difficulty, the Straumanns did not enter into a sale agreement. They returned both earnest money contracts to Klawitter's office at Hector Realty.

Klawitter commenced this action on November 22, 1974, seeking his commission of $8,850, or 5 percent of $177,000. The Straumanns answered and counterclaimed for damages based upon fraud. Testimony at trial did not conflict substantially over the basic facts of the transaction as outlined above. The trial judge, after hearing an offer of proof from the Straumanns' attorney, prevented Mr. Straumann from offer-

ing testimony significantly at variance with the terms of the listing agreement, based on the parol evidence rule. The Straumanns' attorney contended that the proposed testimony was not barred in that it tended to show fraud in the procurement of the listing agreement.

Two questions were given to the jury as a special verdict: (1) Did the Straumanns enter into the listing agreement in reliance upon a false representation by Klawitter? (2) Did the parties modify the original listing agreement to provide that the additional $7,000 was to be added to the down payment? The jury answered "no" to both questions. Pursuant to this verdict the trial court concluded as a matter of law that Klawitter was entitled to his brokerage commission, plus costs and disbursements.

On appeal the Straumanns seek reversal and a new trial on two grounds: (1) Klawitter's representations concerning the marketability of the Straumanns' title to the farm and (2) the exclusion of evidence at trial under the parol evidence rule. The first issue relates back to Klawitter's first meeting with the Straumanns on April 19, 1974. It was Mr. Straumann's testimony that at this meeting he had shown Klawitter a number of documents relating to his title to the farm. He further testified that after Klawitter had looked at these documents "a little bit * * * five minutes at the longest," he said the Straumanns would be eligible to sell the farm. The second issue also relates to this meeting. Mr. Straumann's excluded testimony would have tended to show that the Straumanns had understood the down payment of $50,-000 would be made by September 1, 1974, to allow them to purchase another home. The listing agreement actually signed by the Straumanns provided for a down payment of $50,000 but with only $5,000 earnest money by September 1, 1974, the remaining $45,000 to be paid upon delivery of possession on March 1, 1975. The legal issues are therefore as follows:

(1) Is Klawitter to be denied his commission based upon his indication to the Strau-

manns that they were eligible to sell the farm?

(2) Was the trial court correct in excluding certain testimony by Straumann under the parol evidence rule?

██ 1. The Straumanns argue that because of an existing mortgage (at 4-percent interest with an unpaid principal balance of less than $16,000) on their farm held by Lena Straumann, Mr. Straumann's mother, which mortgage did not contain a prepayment clause, they were prevented from conveying "good and marketable title" to the farm. As noted above, after briefly examining this mortgage and other title documents, Klawitter had expressed the opinion that the Straumanns were "eligible to sell the farm." Mrs. Straumann testified that her husband had said "his mother could be taken care of" as to this mortgage.

This argument was rejected in the clearest of language in *Mayberry v. Davis,* 288 Minn. 73, 178 N.W.2d 911 (1970), which also involved a sale of a farm and a 5-percent broker's commission. The following language from that decision is dispositive of the argument here:

> "We concur in the view that one who contracts with a broker to secure the sale of property which the principal does not own takes the risk of incurring an obligation to pay a commission if title cannot be perfected. It is not the duty of the broker to determine ownership unless he expressly agrees to do so. If the principal has reason to doubt his capacity to produce good title, he may not induce the broker to perform services which prove to be futile. The principal is in a better position than the broker to determine what imperfections there are and what signatures must be obtained to bring about a valid conveyance." 288 Minn. 77, 178 N.W.2d 913.

The evidence does not support the conclusion that Klawitter "expressly" undertook to determine the state of the Straumanns' title to the farm. Straumann's testimony was as follows:

"Q. Well, Mr. Straumann, with regard to all four of those documents, what did you do with them at that meeting?

"A. Well, we got them out of the file and put them down on the table so Mr. Klawitter could look at them to see if we was eligible, or whatever the words may be, to find out if we were eligible to sell the farm.

"Q. Well, did you specifically ask him that question?

"A. Yes, we did.

"Q. And did he at that time look at the documents?

"A. I can't say if he looked at them all, but I know that he looked at a couple of them for a little bit and said that yes we would be eligible to sell the farm.

"Q. You stated, 'For a little bit.' Could you be a little more specific as to how long Mr. Klawitter spent examining those documents?

"A. Oh, I'd say maybe five minutes at the longest."

The listing agreement makes no reference to the determination of title. Under these circumstances any possible flaw in the Straumanns' title was their responsibility—Mrs. Straumann's own testimony indicated that her husband had twice told Klawitter the mortgage could be "taken care of." A prospective seller cannot be allowed to raise this type of defense to a broker's claim for commission when the broker has not expressly agreed to assume the duty to perfect the seller's title. *Mayberry v. Davis, supra.* It cannot now be claimed that Klawitter did this by a mere expression of an opinion as to salability after a five-minute examination of title documents. It was the duty of the Straumanns to cure this possible defect, or to inform Klawitter immediately so that the listing could be cancelled. They chose to allow Klawitter to provide his services, and cannot now refuse to pay for them on this basis.

2. The Straumanns sought to introduce testimony tending to show that, while the listing agreement provided for the $50,000 down payment to be completed upon delivery of possession on March 1, 1975, the Straumanns believed they would receive the full amount of the down payment by September 1, 1974, the expiration date of the listing agreement. The trial judge ruled this testimony inadmissible in that it was an attempt to vary the express terms of a written agreement. The Straumanns contend that this testimony is admissible because it tends to show fraud in the procurement of the listing agreement.

An extensive analysis of the "fraud exception" to the parol evidence rule is not necessary to resolve this issue. The record simply does not show a fraudulent misrepresentation by Klawitter or reliance thereon by the Straumanns. The facts show that following a lengthy discussion with Klawitter concerning the possible sale of their farm, the Straumanns signed a brief, uncomplicated agreement setting out the terms of the sale. Even a glance at the agreement reveals that $45,000 of the $50,000 down payment was to be made on March 1, 1975, and not on September 1, 1974. The offer of proof at most indicates that the Straumanns did not bother to read the listing agreement before signing it, but it does not give any evidence of a deliberate misrepresentation on the part of Klawitter. The terms of the agreement were clear and in no way misleading—if they were unacceptable to the Straumanns, they could have refused to sign.

In short, the excluded testimony would be an attempt by the Straumanns to say that while they agreed in writing to one thing, they meant another. This is precisely the type of evidence intended to be excluded by the parol evidence rule, and the district judge acted properly in excluding it from the record.

The Straumanns' objections to Klawitter's handling of this matter were not mentioned until this action was commenced following the expiration of the listing agreement. He delivered a buyer ready, willing, and able to comply with the listing agree-

ment. There is no evidence that he fraudulently induced the Straumanns to sign the listing agreement. Under such circumstances, their refusal to sell was not justified or in good faith. See, *Chapman v. Merchants Trust Co.,* 184 Minn. 467, 239 N.W. 231 (1931); *Schramsky v. Hollmichel,* 233 Minn. 481, 47 N.W.2d 177 (1951).[1] Klawitter is therefore entitled to his commission. *Olson v. Penkert,* 252 Minn. 334, 90 N.W.2d 193 (1958).

Affirmed.

[1.] This view was recently restated by the court in a case involving the same plaintiff as in this case. *Klawitter v. Billick,* Minn., 242 N.W.2d 588, 593 (1976).