**G & R INVESTMENT CORPORATION, Respondent,**

v.

**Steven J. CHENEY, Appellant.**

No. 48102.

Supreme Court of Minnesota.

July 21, 1978.

Rehearing Denied Oct. 5, 1978.

County District Court which denied defendant's motion for a new trial or amended findings of fact and conclusions of law in an action brought by plaintiff G & R Investment Corporation to recover a real estate broker's fee. We affirm.

On November 9, 1974, plaintiff G & R Investment Corporation entered into an Exclusive Agents Listing Agreement with defendant Steven J. Cheney regarding the sale of a 59-unit apartment building located at 6624 West Broadway, Minneapolis, Minnesota, for $820,000 to Paul Stratman. The relevant terms of the agreement signed by Cheney are:

> "In consideration of your agreement to list the real estate described below and for your efforts to find a purchaser for the same, I hereby grant to you the exclusive agents right to sell or to contract to sell at the price and upon the terms stated below.

> *    *    *    *    *    *

> "I hereby agree to furnish complete abstract of Title certified to date (or Certificate of Title and Registered Property Abstract) and to execute a deed of general warranty in due form of law, conveying a marketable title to the same, in which my wife or husband shall join, to such persons as you shall have sold or agreed to sell same, and for your services, I hereby agree to pay you a brokerage fee [set forth in another section] on the purchase or exchange price thereof, upon slae [sic], contract for sale, or exchange of said real estate made while this agreement remains in force, whether such sale or exchange be made by yourselves, or by any agent or broker or whether at the price and upon the terms stated below, or at a different price, or upon other terms accepted by me. If terms herein include a contract for deed, I agree to execute a contract for warranty deed."

The brokerage fee agreed upon was $5,000 in cash and the transfer of certain interests in land owned by the defendant, valued at $19,500.

Bell, Stapleton & Nolan, St. Paul, for appellant.

William Starr, Minneapolis, for respondent.

Heard before SHERAN, C. J., and YETKA and SCOTT, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This is an appeal by defendant Steven J. Cheney from an order of the Hennepin

Defendant is a sales agent for a Georgia carpet firm and also has been in the business of buying and selling real estate for about ten years. Plaintiff is a real estate brokerage firm.

On November 10, 1974, Joseph Romain, one of plaintiff's agents, procured the execution of a purchase agreement, signed by Stratman and Cheney, for the sale of the apartment building. The parties to the purchase agreement then executed an escrow agreement on December 31, 1974, whereby Romain was appointed the escrow agent. The escrow agreement provided that it would be void if title to the property was not perfected by March 1, 1975. The same day, these parties entered into a contract for deed for the sale of the property, which contract was also held in escrow.

Stratman took possession of the property on January 1, 1975, pending the completion of title opinions. On January 30, 1975, Robert A. Heiberg, an attorney, rendered a title opinion covering the property. Heiberg concluded that fee title to the property was not vested in Cheney and that the title was therefore not marketable as of that date. Cheney then hired his own attorney in an attempt to clear up the title defects. According to Heiberg, the title was still unmarketable.

A release and termination agreement was then entered into on April 24, 1975, returning the parties as closely as possible to their original positions. This document terminated and declared void the purchase agreement, escrow agreement, and contract for deed. Defendant subsequently refused to pay the agreed-upon commission, which precipitated the present action.

Approximately sixty days after the execution of the release and termination agreement, defendant sold the property for $895,000—$75,000 more than the price agreed upon with Stratman.

At the trial of the present action to the district court sitting without a jury, defendant offered parol evidence in an attempt to explain the meaning of the term "contract for sale" contained in the purchase agreement. Cheney said he had never seen this term in any other listing agreement and therefore he had asked Donald Trummer, an agent of plaintiff, what it meant prior to signing the agreement. According to Cheney, Trummer stated that "contract for sale" meant "contract for deed." Cheney therefore contends plaintiff is not entitled to a fee because the contract for deed perished in escrow and was never finalized.

The district court allowed this evidence to be introduced, reserving the right to rule later on its admissibility. It later ruled that parol evidence was not necessary to explain the meaning of the terms of the listing agreement since the agreement was clear on its face, and further stated that "[t]he terms 'contract to sell,' 'contract for sale,' and 'contract for sale of,' as used in the listing contract, includes the execution of a purchase agreement." [1] It was further held that plaintiff was entitled to a full brokerage commission and judgment was ordered to be entered against defendant for $24,500.

■ On appeal, defendant alleges that the refusal of the district court to consider the parol evidence was erroneous. The district court, however, was correct in stating: "We note by way of dicta that, even had the Court received the parol evidence, its introduction into evidence would hardly be dispositive of the central issue." The real issue for determination on appeal is wheth-

1. The district court wrote two well-considered memoranda regarding the parol evidence issue which distinguished the numerous cases cited by defendant. One of the most persuasive reasons offered by the court for not admitting the evidence is as follows:

"Furthermore, we do not believe, as does the defendant, that the terms 'contract to sell,' 'contract for the sale of,' and 'contract for sale,' as used in the listing agreement, are synonymous with the term 'contract for deed.' This conclusion of the Court is supported by the fact that in the second paragraph of the contract, the reference to 'contract for deed' is clearly set forth. It would be unreasonable for this Court to interpret the terms 'contract for sale' or 'contract to sell' as interchangeable expressions for 'contract for deed' when this latter term itself is used within the same listing agreement."

er plaintiff has performed all acts necessary under the law to recover a brokerage fee, even assuming that plaintiff contracted to obtain a sale by contract for deed.

■ It is abundantly clear that a broker will not be deprived of his commission or fee if he obtains a buyer who is willing to purchase property on the seller's terms and the sale is not consummated due to no fault of the broker. As we stated in *Olson v. Penkert,* 252 Minn. 334, 343, 344, 90 N.W.2d 193, 200, 201 (1958):

"We think the rule well established that, if the efforts of the broker are rendered a failure by the fault of the employer, the broker does not lose his commission. *This rule is based upon the familiar principle that no one can avail himself of the nonperformance of a condition precedent who has himself occasioned its nonperformance.* * * *.

*   *   *   *   *   *

"The great weight of authority is that, unless the broker and his employer have expressly stipulated to the contrary, the broker is entitled to his compensation upon the completion of the negotiations which he undertook, irrespective of whether or not the contract negotiated is actually consummated or whether the failure to complete the contract is due to the default or refusal of the employer or to that of the party procured by the broker, *so long as the failure to carry it through is not due to any fault of the broker or so long as he has not been guilty of fraud or bad faith.*" (Emphasis original.)

■ The rule that a broker is not obligated to determine whether or not the seller has good title unless he expressly agrees to do so is equally well established. In *Mayberry v. Davis,* 288 Minn. 73, 77, 178 N.W.2d 911, 913 (1970), we stated:

"We concur in the view that one who contracts with a broker to secure the sale of property which the principal does not own takes the risk of incurring an obligation to pay a commission if title cannot be perfected. It is not the duty of the bro-

ker to determine ownership unless he expressly agrees to do so. If the principal has reason to doubt his capacity to produce good title, he may not induce the broker to perform services which prove to be futile. The principal is in a better position than the broker to determine what imperfections there are and what signatures must be obtained to bring about a valid conveyance."

*Mayberry* was followed recently in *Klawitter v. Straumann,* 255 N.W.2d 407, 411 (Minn.1977), in which we stated that "[a] prospective seller cannot be allowed to raise this type of defense to a broker's claim for commission when the broker has not expressly agreed to assume the duty to perfect the seller's title."

■ The applicability of these principles to the present situation is evident. The sale of the apartment property failed solely because of defendant's inability to obtain marketable title. This failure was in no manner attributable to any fault on the part of plaintiff. It obtained a buyer willing to purchase the property on defendant's terms and completed all the negotiations for which it was responsible within the meaning of *Olson v. Penkert, supra.*

Furthermore, plaintiff did not expressly undertake the burden of perfecting title to the property and there is no evidence that it knew the title was defective. In fact, the listing agreement provided that defendant would execute a general warranty deed "conveying a marketable title" to the property. Plaintiff is therefore entitled to recover the agreed-upon commission, and the district court is affirmed.

Affirmed.