**Arvin FABIAN, et al., Respondents,**

v.

**Reuben SATHER, et al., Appellants.**

No. 81–763.

Supreme Court of Minnesota.

Feb. 12, 1982.

Streater, Murphy, Gernander & Beerling and Leo Murphy, Jr., Winona, for appellants.

Nemes, Thompson & Hansen, Winona, for respondents.

PETERSON, Justice.

The sole issue on appeal concerns whether vendors in a land sale contract are limited by the contract to liquidated damages when they sell the land in question to a third party. The district court held that the vendors were not limited by the liquidated damages provision in the contract. We reverse.

On July 16, 1979, Reuben and Margaret Sather (vendees) agreed to purchase certain real property from Arvin and Janice Fabian (vendors) for $46,000. The vendees made a downpayment of $1,000 with the balance payable on August 25, 1979. The vendees subsequently breached the land sale contract and refused to go through with the purchase.

The vendors then brought this action against the vendees in Winona County District Court for specific performance or damages for breach of the land sale contract. In May 1980, before the trial commenced, the vendors sold the property in question to a third party for $43,000. The vendees immediately moved for summary judgment on the ground that the vendors had abandoned their action for specific performance and that they were limited to the $1,000 liquidated damages specified in the pur-

chase agreement. The district court granted summary judgment on the specific performance claim but denied summary judgment on the damages claim.

The damages claim was tried before the district court without a jury. On June 3, 1981, the district court entered its findings of fact, conclusions of law, and order for judgment awarding the vendors $4,298.79 [1] as damages. The vendees then moved for amended findings of fact and conclusions of law, again contending that the vendors should be limited to $1,000 liquidated damages. In an order dated July 15, 1981, the district court denied the motion. The vendees then appealed to this court.

The vendees contend that the vendors waived their right to specific performance by selling the land at issue to a third party and that they are thereby limited by the express terms of the contract to liquidated damages. We agree. The pertinent part of the land sale contract reads:

If the title to said property be found marketable or be so made within said time, and said buyer shall default in any of the agreements and continue in default for a period of 10 days, then and in that case the seller may terminate this contract and on such termination all the payments made upon this contract shall be retained by said seller and said agent, as their respective interests may appear, as liquidated damages, time being of the essence hereof. This provision shall not deprive either party of the right of enforcing the specific performance of this contract provided such contract shall not be terminated as aforesaid, and provided action to enforce such specific performance shall be commenced within six months after such right of action shall arise.

The vendors do not dispute that the liquidated damages provision is valid if applicable. Rather, they contend that because they elected to enforce the contract by suing for specific performance, they are not bound by the liquidated damages provision. Further, they argue, the sale of the land to a third party was not an abandonment of their option to enforce the contract but was a recognition of their legal duty to mitigate damages. The trial court accepted these arguments in awarding the vendors $4,298.79 damages.

No Minnesota case is directly on point. However, at least two other jurisdictions which have considered this precise point have rendered decisions contrary to the decision reached by the court below.[2]

---

1. The difference between the contract price and the actual market value at the time of the breach was $1,000. The downpayment retained by the vendors covered this damage. The additional, consequential damages sustained by the vendors were as follows:

| | |
|---|---|
| (a) Insurance | $ 197.11 |
| (b) Real estate taxes | 95.85 |
| (c) Abstract and attorney's fees | 157.50 |
| (d) Utilities | 507.31 |
| (e) Additional interest on mortgages and other loans | 3,652.74 |
| (f) Telephone calls and travel expense | 288.28 |
| Sub Total | $4,898.79 |
| Less Rent Received | 600.00 |
| Total Consequential Damages | $4,298.79 |

2. Both parties relied on a series of Wisconsin cases to support their respective positions before the district court but failed to discuss these cases in their briefs submitted to this court. In any event, we find these cases inapposite. *Moritz v. Broadfoot*, 35 Wis.2d 343, 151 N.W.2d 142 (1967), stands for the proposition that a liquidated damages provision in a land sale contract does not preclude a vendor's action for specific performance. *Sorce v. Rinehart*, 69 Wis.2d 631, 230 N.W.2d 645 (1975), simply affirms the proposition stated in *Moritz*. *Sorce* is more complex factually, however, because the vendor, after instituting a suit for specific performance, sold the land at issue to a third party *pursuant to a stipulation with the original vendee.* Because of the stipulation, the court allowed the vendee to recover actual damages. Neither *Moritz* nor *Sorce* are contrary to our holding in this case.

*Zimmermann v. Thompson*, 16 Wis.2d 74, 114 N.W.2d 116 (1962), merits a more extended discussion because of the similar factual context. In *Zimmermann*, the vendee agreed to buy certain real estate for $43,500 and paid $500 down. The contract provided: "Should the undersigned Buyer fail to carry out this agreement, all money paid hereunder shall, at the option of the Seller, be forfeited as liquidated damages and shall be paid to or retained by the Seller, subject to deduction of broker's commission and disbursements, if any." *Id.* at 75, 114 N.W.2d at 116–17. The vendee breach-

In *Harris v. Dawson*, 479 Pa. 463, 388 A.2d 748 (1978), the vendees agreed to buy a tract of land for $60,000 and made a downpayment of $100. The purchase agreement contained the following default clause:

> Should the buyer fail to make settlement as herein provided, and the said time is hereby agreed to be the essence of this agreement, sum or sums paid on account are to be retained by the seller either on account of the purchase money, or as compensation for the damages and expenses he has been put to in this behalf, as the seller shall elect and in the latter case this contract shall become null and void and all copies to be returned to the seller for cancellation.

*Id.* at 466, 388 A.2d at 749. The vendees breached the contract and the vendors resold the land to a third party for $54,000. The vendors then sued the vendees for the difference between the contract price and the resale price. After asserting that the contract unambiguously gave the vendor the option of suing for specific performance or accepting the $100 as liquidated damages, the Pennsylvania Supreme Court reasoned as follows:

> In view of the sellers' decision to resell in this case they were thereby precluded from proceeding under the first option. The instant sellers now seek to ignore the agreement and proceed in assumpsit for damages. This course of action is precisely what the disputed clause was intended to avoid. The concept of agreeing at the outset to a contract upon the liqui-

dation of damages in the event of a subsequent breach of the terms of that contract was designed to eliminate the cost and the uncertainty involved in seeking relief through litigation after the fact. *Id.* at 467, 388 A.2d at 750. The court concluded that the vendors precluded themselves from suing for the purchase price by reselling the land and were limited to retaining the $100 as liquidated damages.

A similar resolution was reached by the Washington Supreme Court in *Underwood v. Sterner*, 63 Wash.2d 360, 387 P.2d 366 (1963). In that case, the vendees agreed to buy some property for $250,000 and made a downpayment of $25,000. The "Earnest Money Receipt and Agreement" provided that if the "purchaser fails or refuses to complete purchase, the earnest money shall be forfeited as liquidated damages unless seller elects to enforce this agreement." *Id.* at 365, 387 P.2d at 369. The vendee breached and the vendor resold the property to a third party for $225,000. The vendor then sued the vendee for damages and the trial court awarded her a judgment of $50,000 plus interest. In reversing the trial court, the supreme court reasoned as follows:

> The "EARNEST MONEY RECEIPT and AGREEMENT," with which we are concerned and which, as indicated, was prepared by the owner's attorney, is neither vague nor ambiguous. It gives alternative remedies to the "seller" * * * if the purchaser refuses to complete the purchase, i.e., she may elect specific performance or liquidated damages. Having sold

---

ed and the vendor resold the property to a third party. The vendor kept the $500 downpayment and sued for $2,000, which the vendor asserted were the actual damages after crediting the $500 downpayment.

The court interpreted the contractual provision as giving the vendor the option of retaining the downpayment as liquidated damages or suing for actual damages. Nevertheless, the court held that the vendor, by keeping the downpayment, had elected the liquidated damages option and thus was barred from suing for actual damages.

Because the vendor in this case also retained the vendee's downpayment, *Zimmermann* is directly contrary to the result urged by the vendor. Furthermore, the contract provision in

*Zimmermann*, which is identical to the provision in *Moritz* and *Sorce*, expressly gave the vendor the option of keeping all payments as liquidated damages. The Wisconsin Supreme Court interpreted this provision as allowing the vendor to retain the downpayment as liquidated damages or to sue for actual damages. We need not consider whether we would interpret this language in the same manner as the Wisconsin Supreme Court. As the vendors concede, the contract in this case expressly provided the vendor with but two alternatives: to retain the downpayment as liquidated damages or to sue for specific performance. For this reason, we find these Wisconsin cases distinguishable.

the property for $225,000 to another purchaser, she waived the remedy of specific performance. She cannot now choose a third remedy of unliquidated damages which is not written into the agreement. *Id.* at 367, 387 P.2d at 370.

 We are persuaded by the reasoning in these two opinions and therefore hold that the vendors' sale of the property to a third party restricts their recovery to the $1,000 liquidated damages. The vendors' argument that they were only seeking to mitigate damages in reselling the property is superficially appealing. Indeed, a vendor who sues for compensatory damages for breach of a land sale contract does have the duty to use reasonable diligence to minimize his damages. *Frank v. Jansen*, 303 Minn. 86, 96, 226 N.W.2d 739, 746 (1975). However, this argument neglects that the vendors in this case were bound by the contract which they drafted to seek either the equitable remedy of specific performance or the legal remedy of liquidated damages. By selling the property to a third party, they abandoned their claim for specific performance and are limited to the liquidated damages. If the vendors desired a third remedy of actual damages, they should have included such a provision in the purchase agreement.

The vendors also argue that it was within the trial court's equitable jurisdiction to award compensatory damages. They neglect, however, to delineate the equities which favor them on these facts. A liquidated damages provision in a land sale contract is usually to the advantage of the vendor. Because land value generally increases, a breach of a land sale contract ordinarily allows the vendor to retain the deposit and to recover a profit upon resale of the land. *See generally* Comment, *Forfeiture: The Anomaly of the Land Sale Contract*, 41 Alb.L.Rev. 71 (1977). Vendors rarely utilize the remedy of specific performance because "its practical applicability is limited to a breach by a solvent purchaser of depreciating property." *Id.* at 88. The risk of a land sale contract with a liquidated damages provision is that the value of land

may decrease. The equities do not favor the vendors here simply because the risk became a reality.

Reversed and remanded for proceedings consistent with this opinion.

KELLEY, J., took no part in the consideration or decision of this case.