**REAL ESTATE DYNAMICS, INC., Appellant,**

v.

**Clifford C. GENZLER, Respondent.**

No. C2–84–2003.

Court of Appeals of Minnesota.

June 11, 1985.

Frank E. Villaume, III, Von Feldt & Salmen, St. Paul, for appellant.

Donald G. Clapp, St. Paul, for respondent.

Heard, considered and decided by POPOVICH, C.J., and PARKER and FOLEY, JJ.

## OPINION

PARKER, Judge.

Under the terms of an exclusive listing agreement, appellant Real Estate Dynamics (Dynamics) was to receive a real estate commission if it obtained a buyer for real property owned by Larry C. Peterson and Gloria J. Peterson. Respondent Clifford Genzler agreed to purchase the property and to pay a reduced commission to Dynamics, and he also paid a $1,000 deposit. Genzler later refused to close the sale, alleging that title to the property was unmarketable.

Acting on a provision in the earnest money contract, the Petersons eventually terminated the contract and retained the $1,000 as liquidated damages. They later sold the property to third persons, and Dynamics received a commission from that sale.

Dynamics commenced a lawsuit against Genzler for its lost commission. Genzler responded that his refusal to close was reasonble because the title was unmarketable and counterclaimed for his $1,000 deposit. The trial court found that the title was marketable but that Dynamics was not entitled to collect its commission from Genzler after the Petersons terminated the contract and obtained liquidated damages. We affirm.

## FACTS

Dynamics, an investment real estate brokerage firm, had an exclusive listing agreement with the Petersons under which Dynamics would receive a brokerage fee if it obtained a buyer for an apartment building located in St. Paul, Minnesota. Genzler is an investor and manager of residential and commercial real estate.

On April 26, 1983, Genzler and the Petersons entered into an earnest money contract by which Genzler agreed to purchase the building subject to certain contingencies. Genzler also agreed

to pay any commission due on this sale contingent upon Real Estate Dynamics dividing said commission equally with Knudsen Realty Co. [for whom Genzler was a licensed real estate agent].

The contract also provided, in part:

The seller shall, within seven days after approval of this agreement, furnish an abstract of title certified to date * * *. The buyer shall be allowed 10 days after receipt thereof for examination of said title and the making of any objection thereto * * *. If any objections are so made the seller shall be allowed 120 days to make such title marketable. * * * [U]pon correction of title and within 10 days after written notice thereof, the buyer shall perform this agreement according to its terms.

The Petersons accepted a $1,000 earnest money deposit, and May 30, 1983, was set as the closing date.

The abstract of title was not delivered to Genzler's attorney until May 27, 1983. On the date set for closing Genzler refused to consummate the sale, indicating the title was not marketable and citing certain defects.

Thereafter, the Petersons attempted to correct the title defects specified. The Petersons scheduled another closing for September 12, 1983. Genzler again refused to close, however, claiming the Petersons had not satisfactorily cured the title defects and had breached the earnest money agreement by not furnishing the abstract of title on time.

On December 6, 1983, the Petersons served a notice of cancellation on Genzler. When Genzler did not cure, they elected to terminate the contract and retain the $1,000 deposit pursuant to the following provision in the earnest money contract:

[I]f the title to said property be found marketable or be so made within said time, and said buyer shall default in any of the agreements and continue in default for a period of 10 days, then and in that event *the seller may terminate this contract, and on such termination all the payments made upon this contract shall be retained by said seller and said agent, as their respective interest may appear, as liquidated damages * * ** but this provision shall not deprive either party of the right of enforcing the specific performance of this contract provided such contract shall not be terminated as aforesaid * * *.

The Petersons' property was sold July 20, 1984, to another buyer, with Dynamics acting as agent and receiving a commission on the sale.

Dynamics and Genzler, alleging it was entitled to the brokerage commission under the earnest money contract. Genzler responded by alleging that Dynamics lacked standing to bring the action and that the sellers breached the earnest money contract by their delay in providing the abstract of title and by failing to deliver marketable title to the property. He counterclaimed to recover his $1,000 earnest money deposit.

At trial the parties offered conflicting expert testimony as to the marketability of the title. The trial court concluded that the sellers rightfully canceled the contract and retained the earnest money because they supplied marketable title, Genzler waived the delay in presenting the abstract, and Genzler's reasons for not performing were not related to marketability of the title. The court dismissed Dynamics' claim, however, because it concluded that Dynamics' rights were terminated when the seller canceled the contract. Dynamics appealed, and Genzler filed a notice of review.

## ISSUES

1. Did the trial court err in finding that the sellers rightfully canceled the earnest money contract and retained the $1,000 deposit because respondent's refusal to perform was not based on marketability of title?

2. Did the trial court err in finding that appellant had no claim against respondent because the sellers had terminated the contract and collected liquidated damages?

## DISCUSSION

### I

Genzler argues that the trial court erred in finding the Petersons rightfully terminated the earnest money contract and retained the $1,000 deposit because his refusal to close the sale was reasonable and done in good-faith reliance upon his attorney's opinion that the property's title was unmarketable.

Dynamics' expert witnesses testified that the objections to the title raised by Genzler are business considerations to be weighed and resolved before offering to purchase a property but do not go to the question of marketability of title. They testified that the title was marketable. Genzler's experts disagreed.

"It is for the trier of fact to resolve conflicts in expert testimony and to determine the comparative weight to be given each opinion." *Robertson v. Park Brick Finishers*, 300 Minn. 561, 562, 220 N.W.2d 489, 490 (1974). The trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous. *Estate of Serbus v. Serbus*, 324 N.W.2d 381, 385 (Minn.1982). The trial court's finding that Genzler refused to close the sale for business reasons and not because of unmarketability of the title was reasonably supported by all the evidence and will not be overturned.

### II

The general rule is that if a real estate broker produces a willing buyer and willing seller who respectively buy and sell at an agreed price through his efforts, the broker is entitled to a commission. *Wright v. M.B. Hagen Realty Co.*, 269 N.W.2d 62, 64 (Minn.1978). Moreover, it has been recognized that a broker may not be denied a commission merely because a sale is not consummated for reasons beyond the broker's control. *Mayberry v. Davis*, 288 Minn. 73, 178 N.W.2d 911 (1970); *Olson v. Penkert*, 252 Minn. 334, 90 N.W.2d 193 (1958). Dynamics claims that because the Petersons obligated themselves to pay it a commission if it produced a buyer for their property, and because Genzler agreed to pay the commission owed (provided it was divided evenly with Knudsen Realty), Dynamics is entitled to its commission. Dynamics also argues it is a third-party beneficiary of the earnest money contract and as such may enforce Genzler's promise to pay a portion of the commission even though the Petersons cancelled the contract.

As Genzler points out, however, Dynamics overlooks certain very specific language contained in the earnest money contract:

> [If the title is marketable and the buyer defaults] the *seller* may terminate this contract, and on such termination all the payments made upon this contract shall be retained by said *seller and said agent*, as their respective interest may appear, as liquidated damages * * *. [T]his provision shall not deprive either party of the right of enforcing the specific performance of this contract *provided* such contract shall not be terminated * * *.

(Emphasis supplied).

This provision plainly contemplates that the agent is bound by the seller's election of remedies. The Petersons had the option of seeking specific performance or terminating the contract. They opted to terminate. In that case the damages of both the Petersons and Dynamics are limited to any money paid on the contract as liquidated damages.

In *Fabian v. Sather*, 316 N.W.2d 10 (Minn.1982), relied upon by the trial court, the parties signed a land sale contract containing a nearly identical liquidated damages clause. The question was whether the vendors were limited to liquidated damages when the vendees refused to close the sale and the vendors sold the property to third persons. In holding that they were so restricted, the court said the vendors were bound by the contract to seek either specific performance or liquidated damages. *Id.* at 13.

Similarly, in this case the Petersons and their agent, Dynamics, were both limited by the contract to the legal remedy of liquidated damages because they chose not to seek specific performance. There has been no allegation that Dynamics was misled or misunderstood the terms and conditions of the contract. Dynamics seeks to isolate one favorable provision of the contract and bind Genzler to it while claiming not to be bound by another provision of the same contract that is less beneficial.

## DECISION

The trial court did not err in finding that the sellers rightfully terminated the contract and retained respondent's deposit because his refusal to close was not based on marketability of the title. The trial court did not err in finding that appellant was bound to the provision in the contract limiting it to liquidated damages when the seller terminated the contract.

Affirmed.